THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JOSEPH J. CAHILL, Appellant.

1. CHAPTER 689, LAWS 1905, IS CONSTITUTIONAL — POWERS OF SUPERINTENDENT OF ELECTIONS. The act amending the statute relative to the powers and duties of the superintendent of elections for the Metropolitan elections district is valid. It creates an official who has no power to entertain proceedings to punish a person guilty of illegal registration, but who is empowered to investigate the subject to the end that illegal registration may be discovered and voting thereon prevented.

2. EFFECT OF IMMUNITY CLAUSE IN CONSTITUTION AND THE STATUTE. Authorities bearing upon immunity from punishment by reason of evidence compulsorily given, and prohibiting its use in any prosecution against the party by whom it is given, collated and applied where defendant had made an affidavit before the superintendent of elections relative to offenses committed by other persons which contained statements relative to himself, and *held*, that this last circumstance did not bring him within the range of constitutional protection when on trial for perjury in making the statements relative to the other persons.

3. Witness — How Protected. If, in view of the evidence, the defendant is to be regarded as implicated in the illegal registration of the others so that ordinarily he should not have been required to make statements in reference to their cases, he would come within the immunity extended by section 41q of the Penal Code, and, therefore, was properly called on to give information about them. Moreover, if the statements tended to incriminate him he should have objected at the time to making them on that ground.

4. Evidence. Defendant was charged with falsely swearing in such affidavit that two men named by him had slept in a certain building almost every night for two or three months and so establishing that presumptively they were entitled to register from said building, as they had done. Testimony was given by each of these men of a conversation with defendant in which the latter urged registry and promised help in case of trouble over the same. In one of the conversations which was connected and entire, defendant incidentally made a statement showing that he had been guilty of the crime of illegal voting. The trial judge instructed the jury that the evidence was only competent as indicating defendant's knowledge that the statements subsequently sworn to were false. *Held*, that the admission of the evidence did not constitute reversible error; that the prosecution was not obliged to ask for detached sentences of the conversation and thus avoid the one particularly objected to.

*People* v. *Cahill*, 126 App. Div. 391, affirmed.

(Argued June 10, 1908; decided October 23, 1908.)

Appeal from an order of the Appellate Division of the Supreme Court in the second judicial department, entered May 12, 1908, which affirmed a judgment of the Kings County Court rendered upon a verdict convicting the defendant of the crime of perjury.

The facts, so far as material, are stated in the opinion.

*Martin W. Littleton, Frederick Allis* and *Luke O'Reilly* for appellant. There was no perjury because defendant was not lawfully under oath. (*Norton* v. *Shelby*, 118 U. S. 442; *Boyd* v. *U. S.*, 116 U. S. 616; *Counselman* v. *Hitchcock*, 142 U. S. 547; *People* v. *Forbes*, 143 N. Y. 219; *People* v. *Courtney*, 94 N. Y. 490; *People* v. *Sharp*, 107 N. Y. 446; *O'Reilly* v. *People*, 86 N. Y. 154; *Case* v. *People*, 76 N. Y. 242; *Lambert* v. *People*, 76 N. Y. 220; *Ortner* v. *People*, 4 Hun, 323; *People* v. *Albertson*, 8 How. Pr. 363; *People* v. *Tracy*, 9 Wend. 265; *People* v.

*Lewis,* 14 Misc. Rep. 266.) The immunity given by section 41q of the Penal Code is not an adequate substitute for that of the Constitution. (*Counselman* v. *Hitchcock,* 142 U. S. 547; *People* v. *Forbes,* 143 N. Y. 219, 228; *People* v. *O'Brien,* 176 N. Y. 253; *People* v. *Priori,* 164 N. Y. 466; *Brown* v. *Walker,* 161 U. S. 591; *Interstate Com. Comm.* v. *Baird,* 194 U. S. 25.) The testimony of the witnesses White and McKenna, relative to conversations had with the defendant in regard to their registration, admitted over defendant's objection, was incompetent for the reason that it was not relevant to the issue nor relevant to any fact in issue. (Whart. on Ev. [8th ed.] §§ 23, 29.)

*William S. Jackson, Attorney-General (James A. Donnelly* of counsel), for respondent. The constitutional privileges and immunities of the defendant were not violated in the investigation conducted pursuant to the provisions of section 7 of chapter 689 of the Laws of 1905, nor was he in any sense compelled to be a witness against himself. (*Burrell* v. *Montana,* 194 U. S. 572; *Matter of Knickerbocker Co.,* 139 Fed. Rep. 713; *Matter of Consolidated Co.,* 66 Atl. Rep. 790; 3 Wigmore on Ev. §§ 2268, 2281; 5 Wigmore on Ev. 2281a; *Mackin* v. *People,* 115 Ill. 312; *U. S.* v. *Kimball,* 117 Fed. Rep. 165; *People ex rel. Taylor* v. *Seaman,* 8 Misc. Rep. 858; *Matter of Leich,* 31 Misc. Rep. 671; *People* v. *Sharp,* 107 N. Y. 427; *People ex rel. Lewisohn* v. *General Sessions,* 96 App. Div. 201; *Brown* v. *Walker,* 161 U. S. 591.) The immunity from prosecution guaranteed by section 41q did not include permission to the defendant to commit perjury in the investigation in which he made his affidavit. (*People* v. *Courtney,* 31 Hun, 199; 94 N. Y. 490; *State* v. *Hawkins,* 115 N. C. 712; *State* v. *Faulkner,* 185 Mo. 673; *Mackin* v. *People,* 115 Ill. 312.) The conversations between White, McKenna and the defendant with respect to the registration of the former from No. 413 Henry street were relevant, material and competent. (*People* v. *Van Tassel,* 156 N. Y. 561; *People* v. *O'Neil,* 112 N. Y. 335; *People* v.

*Doty,* 175 N. Y. 164; *People* v. *Mills,* 91 App. Div. 331; 178 N. Y. 274; *People* v. *Putnam,* 90 App. Div. 125; *People* v. *Clark,* 90 App. Div. 605; 179 N. Y. 518; *People* v. *Summerfield,* 95 App. Div. 636; 180 N. Y. 511; *People* v. *Weller,* 98 App. Div. 623; 180 N. Y. 556; *People* v. *Gaffey,* 182 N. Y. 257; *People* v. *Abeel,* 182 N. Y. 415; *People* v. *Dolan,* 186 N. Y. 4.)

HISCOCK, J.   Chapter 689 of the Laws of 1905, entitled "An Act to amend chapter six hundred and seventy-six of the laws of eighteen hundred and ninety-eight, entitled ' An Act to create a metropolitan elections district; provide for the appointment of a state superintendent therein, and to prescribe his powers and duties,' generally," amongst other things authorizes the state superintendent or his deputy to subpœna persons and examine them with reference to cases of suspected illegal registration.   Said official having reason to suspect that the appellant and two other persons, named respectively McKenna and White, had illegally registered from a certain building in the borough of Brooklyn, caused the appellant to be subpœnaed for the purpose of giving information in regard to said cases.   He appeared and, without any objection, made an affidavit dated November 2, 1905, tending to show that he and each of said other individuals was entitled to register as he had.   He has been convicted of perjury on the ground that the statements made with reference to the other individuals were false.

We regard as too clear to require discussion the propositions questioned by counsel for the appellant that said chapter 689 of the Laws of 1905 is constitutional; that there was evidence permitting the jury to find as it did that the statements made by appellant in respect to McKenna and White were material and false, and that the appellant is not immune from punishment for giving such false testimony under the immunity statute hereafter to be referred to or for any other reason if his examination was legal.

Contenting ourselves with thus merely stating our conclu-

sions upon these points, we pass to a consideration of the other questions which have been argued.

Appellant contends that the proceeding before the superintendent of elections in which he made his affidavit was a " criminal case " against him, and that having been subpœnaed and examined under the compulsion of the statute, he has been compelled to become a witness against himself in violation of the provisions of the Constitution both of the United States and of the State, which provide that " No person shall be compelled in any criminal case to be a witness against himself," and that, therefore, the whole proceeding, including his affidavit containing the alleged false statements, is absolutely null and void, and furnishes no basis for a charge of perjury.

It is answered with considerable force that the proceedings before the superintendent in which appellant was examined were not of such a character as to constitute a " case " and come within the purview of the constitutional provision just quoted. An inspection of the statute creating and prescribing the duties of the office of superintendent of elections does give much weight to the argument that it creates a purely administrative official who is empowered in various ways, including an examination of witnesses, to investigate, amongst other things, the subject of registration of voters, to the end that illegal registration may be discovered and voting thereon prevented. Such official by the provisions of the statute has no power to punish or entertain proceedings for the punishment of a person guilty of illegal registration. In this respect he differs from a grand jury investigating and having the power to take action looking to the punishment of alleged crimes, and proceedings before which body have been held to come within the contemplation of the constitutional provision quoted. (*Counselman* v. *Hitchcock*, 142 U. S. 547; *People ex rel. Lewisohn* v. *O'Brien*, 176 N. Y. 253.)

But if we assume that an investigation by such official was a case or proceeding contemplated by the Constitution, we do not think that appellant's constitutional rights were violated

in obtaining from him the testimony on account of which he has been convicted.

If the proceeding was more than a mere general investigation then there were three separate cases or proceedings and the alleged false testimony for which conviction has been had is to be regarded as given in cases against McKenna and White rather than in any case against himself, and it was not harmful to him.

It appears without contradiction that at the time when appellant appeared and made his affidavit there was pending in the office of the superintendent an investigation of the registration of all three men and subpœnas had been issued in the investigation of White and McKenna. The deputy superintendent testified as follows: " Mr. Cahill came in and was referred to me and I told him we had received some information to the effect that there were three men registered from 413 Henry Street who did not reside there, of whom he was one. * * * I asked him would he relate the facts with reference to these three cases and give me the names of the other two registered persons besides himself, and he said that he would. We had first a general conversation. I asked him if he lived at that place himself and he stated that he did. * * * I then asked him with reference to McKenna and White. * * * I then asked him if he would swear that that was true and he said he would."

The information including the alleged false statements with respect to the residence of McKenna and White, for which alone the appellant has been convicted, was then incorporated in the affidavit which has been made the basis of this prosecution, and the witness was sworn for the first time when he verified it.

While the deputy superintendent testifies that the affidavit was entitled "People v. Joseph J. Cahill," the affidavit itself shows that it was simply entitled "Case No. 354." We do not, however, regard the mere title of the affidavit as very material. As a matter of fact, the superintendent was endeavoring to secure information in regard to three cases, and the witness was brought in and in rather an informal manner·

interrogated in regard to each and then his statements as to all were embodied in one affidavit, and verified as they chanced to be applicable to one or the other.    So far as the practical result was concerned it was not different than it would have been had the witness verified separately the statements pertinent to each case.

Naturally illegal registration is an individual crime.    The illegal registration of the three men could not well constitute a joint offense, and there was nothing on the face of the proceedings then pending to indicate that Cahill was implicated in the illegal registration of White and McKenna and that, therefore, he was constitutionally relieved from giving information in respect to them or that such information in any way incriminated him.    Apparently it was perfectly proper and legal to subpœna and examine him in respect to the others, and no one could say that in so doing he was being called on to give testimony against himself.

The real and precise question, therefore, seems to be whether the validity of his oath to statements relating to White and McKenna, which he could be compelled to make, is destroyed because at the same time he was required to verify other statements relating to himself, and which it will be assumed he could not have been forced to make.

We think that it was not, and that to hold otherwise under the circumstances of this case would be going beyond that which has been held in any of the cases called to our attention.

In *People* v. *Sharp* (107 N. Y. 427) the defendant had been examined before a legislative committee about certain acts of alleged bribery, and subsequently the attempt was made to use the evidence so given by him for the purpose of proving his complicity in the crime, and what was said with reference to compelling a person to be a witness against himself in a criminal case must be read in the light of those fundamental facts.

*People ex rel. Lewisohn* v. *General Sessions* (96 App. Div. 201) involved contempt proceedings against the relator because of his refusal to answer certain questions before a grand jury

on the ground that such answer would tend to incriminate him, and what was said upon the subject of the right of a person not to be a witness against himself was said in the discussion of that general question.

The case of *Counselman* v. *Hitchcock* (142 U. S. 547) also involved a discussion of questions arising in connection with the refusal of a witness to answer questions on the ground that they would tend to incriminate him.

In *U. S.* v. *Edgerton* (80 Fed. Rep. 374) it appeared that the defendant was required to appear before a grand jury without knowing that his own conduct was under investigation, and was called on to give evidence material to a charge for which he was subsequently indicted, and it was held that this was improper.

In *People* v. *Singer* (18 Abb. New Cases, 96) the defendant was indicted for murder and it appeared that she had been brought before the grand jury and interrogated with reference to the charge against herself for which she was subsequently indicted, and this was held to be improper.

*Boone* v. *People of the State of Illinois* (148 Ill. 440) presented substantially the same facts.

Thus it appears in each one of the cases that the question involved was as to compelling a person to give evidence in regard to an offense alleged to have been committed by the witness. Here, as already sufficiently appears, the statements related to apparently independent offenses committed by other people.

If in the light of what was subsequently testified to on the trial, it should be contended that appellant was in fact implicated in the illegal registration of White and McKenna and that, therefore, he should not have been compelled to give evidence in their cases, two answers may be made.

In the first place, we have no doubt that he secured immunity against any harm from such testimony, which was as broad as the protection afforded by the constitutional provisions to which we have referred. Section 41q of the Penal Code, which is here applicable, provides as follows: " A person offending against any section of this title (which title relates

amongst other things to illegal registration) is a competent witness against another person so offending and may be compelled to attend and testify on any trial, hearing or proceeding or investigation in the same manner as any other person. The testimony so given shall not be used in any prosecution or proceeding, civil or criminal, against the person testifying. Any such person testifying shall not thereafter be liable to indictment, prosecution or punishment for the offense with reference to which his testimony was given, and may plead or prove the giving of testimony accordingly, in bar of such an indictment or prosecution."

*Secondly*, if appellant felt that his testimony in regard to White and McKenna might disclose criminal conduct on his own part from which he was not otherwise protected it was his right and duty to decline to answer the questions, which he did not do. (*People* v. *Priori*, 164 N. Y. 459 ; *People ex rel. Lewisohn* v. *General Sessions*, 96 App. Div. 201.)

Certain objections and exceptions to the admission of evidence are urged upon our consideration.

Both McKenna and White were sworn as witnesses for the prosecution to alleged statements by the appellant. Over objections and exceptions the former testified as follows :

" Mr. Cahill told me to register.   *   *   *

" Q. What did he say to you about registering and what did you say to him about registering first ?   [Objections.]

" Mr. Jones : Answer this last question as to who spoke first.   A. Mr. Cahill asked me did I register and I said no, I wasn't of age ; he said ' How many months do you lack of twenty-one ? '   I said ' Six or seven.'   He said ' Go on and register anyway, I voted when I was sixteen years of age.'

" Mr. Littleton : I object and move to strike out the answer on the ground that it is utterly and entirely without any issue in this case or to any conception of the indictment in this case.

" The Court : Standing by itself it may be, but he can have all the conversation as bearing on the defendant's knowledge when he swore the man slept there if he knew he did not.   *   *   *

" Mr. Littleton : I object to it on the ground that the sole issue to be submitted to this jury is whether this man swore falsely when he swore this man slept there always and that is no part of this issue, but does tend to prove another charge and another crime against this defendant.

" The Court: I think it is pertinent and I will allow it. [Defendant excepted.]

" Mr. Jones : Go on and tell what was said by you ? A. Mr. Cahill told me to go ahead and register and I said I wasn't of age, and he said you go up, I will see no harm comes to you, and I said I am kind of afraid, and he said go on up anyway, and I came back. He told me where to register from — 413 Henry Street. I didn't say anything about registering from 413 Henry Street."

The witness White testified over objection and exception:

" Go on and tell the court and jury what the defendant said ?  How did you come to register from 413 Henry Street, if you didn't sleep there ?  A. I stood on the opposite corner and Mr. Cahill came out with a cigar in his mouth  *   *   * and he said : ' Mr. White, go up and register and if any harm comes to you I will see that you get out.' "

It may be conceded at once that this evidence was material and calculated to prejudice the appellant's case, and if error was committed in its reception he ought to have relief.   The question is whether it tended, directly or indirectly, in any degree, great or small, legitimately to establish that the appellant was guilty of the crime of perjury which he was charged with having committed when he testified before the superintendent of elections in the following November : " I formerly resided at Henry Street  *   *   *  and took up my residence at 413 Henry Street two or three months ago  *   *   *  and both John White and Bernard McKenna have slept there almost every night during that time."

In determining this question it is well to bear in mind the circumstances under which the appellant is charged with having committed perjury in making the statement which he did. The subject under investigation was the right of those two

men to register from 413 Henry street, and the record makes
it quite apparent that on the hearing before the superintend-
ent of elections the questions whether they were entitled to
register and whether they had slept at 413 Henry street as
testified to by appellant were regarded as identical.   If they
had so slept at the place in question as testified by appellant
it indicated that they were entitled to register, and, conversely,
if they were not entitled to register it would indicate that they
had not been living at Henry street as appellant testified.

If the appellant at the time they registered did or said any-
thing which indicated appreciation of danger in their so doing
we think it was some evidence of an admission on his part that
they had not been staying at Henry street for a sufficient length
of time to permit their registry and, therefore, that he was
swearing falsely when he testified to facts establishing their
right to register.   This was certainly true in the case of White
whose only known lack of qualifications was lack of residence.
We think it was also true in the case of McKenna.   For while
he gives non-age as an excuse for not registering, there is also
evidence to show that he was not qualified by residence, and,
therefore, anything in the way of an admission by appellant
that he was not qualified to register might be considered by a
jury as relating to either disqualification.

It remains then but to add in this connection that in our
opinion appellant's direction to McKenna and White to regis-
ter from Henry street followed in each case by a promise to
protect the man from harm if he did so, was susceptible of the
construction by the jury that he knew that each man was liable
to get into trouble if he registered and that this trouble would
arise from lack of that very residence in the district which
appellant subsequently attempted to establish by false
testimony.

But, further, than this, evidence of these conversations
showing his direction to each man to register and his promise
to protect him from harm if he did so, both by reason of the
express promise and by reason of his having become connected
with the registry as he did, established a direct motive for

his testimony before the superintendent that each man was qualified by staying at 413 Henry street to make the registry which was then being investigated and was competent for that purpose. (*Commonwealth* v. *Hudson*, 97 Mass. 565; *Pierson* v. *People*, 79 N. Y. 424, 435.)

Much stress is laid on the fact that the evidence of McKenna tells of an admission by the appellant that he had voted before he was entitled to, and, therefore, had committed another crime than that for which he was being tried. Evidence of such admission by itself might have been entirely incompetent, and the court so indicated at the time of its reception. But the conversation detailed by each witness was an entire and connected one relating to a single subject, and even if that question was raised, as it probably was not, neither authority nor good practice required counsel by leading questions to draw from the witness what he deemed a material sentence scattered here and there through the conversation. Under the circumstances he was entitled to ask for the conversation as an entirety. The court plainly laid down the rule that the object of the conversation was not to show the commission of some other crime by the appellant but that it simply bore on his knowledge when he swore to the facts already detailed.

The judgment should be affirmed.

WILLARD BARTLETT, J. (dissenting). Under the act creating the metropolitan elections district, consisting of the counties of New York, Kings, Queens, Richmond and Westchester, and providing for the appointment of a state superintendent therein and prescribing his powers and duties, the deputy superintendents of elections are authorized, among other things, to investigate all questions relating to the registration of voters, and for that purpose they are empowered to visit and inspect any house, dwelling, building, inn, lodging house or hotel within the metropolitan district and to interrogate any inmate, house-dweller, keeper, caretaker, owner, proprietor or landlord thereof or therein as to any person or persons

residing or claiming to reside therein or thereat. (Laws of 1898, chap. 676, as amended by Laws of 1905, chap. 689; see § 6, subd. 1.) The superintendent, his chief deputy and not more than ten deputies, duly designated by the superintendent for that purpose, are authorized to administer oaths and affirmations to any person in any matter or proceeding authorized as aforesaid and in all matters pertaining or relating to the elective franchise. (§ 7.) In November, 1905, a deputy thus designated, named Jesse Fuller, Jr., administered an oath in Kings county to the defendant and took his examination under oath with regard to the residence of John White and Bernard McKenna, two men who had registered in the sixth election district of the third assembly district in Kings county for the purpose of voting at the ensuing election. The defendant made affidavit before Deputy Superintendent Fuller on the 2nd day of November, 1905, as follows: " I reside at number 413 Henry Street, Brooklyn; I formerly resided at the corner of Henry and Baltic Streets but took up my residence at 413 Henry Street two or three months ago and slept there on the second floor, the one just above the saloon, almost every night since, and both John White and Bernard McKenna have slept there also almost every night during that time." The indictment charged the defendant in the first count with the crime of feloniously making a false statement under oath before a deputy state superintendent of elections, and in the second count with the crime of perjury, and alleged that the sworn statement above quoted was false and was known to be so by the defendant at the time when he made it.

Upon the trial there was no attempt to prove that the statement was false so far as it related to the residence of defendant himself. The learned trial judge instructed the jury that it was not claimed that the affidavit was false entirely, but that the People contended " that when Joseph J. Cahill swore that both John White and Bernard McKenna had slept there at 413 Henry Street also almost every night during the past two or three months before the 2nd day of November, 1905,

he swore wilfully to that which he knew to be false and that McKenna and White had not so slept there." It is apparent, therefore, that the verdict of guilty must have been based solely upon a finding by the jury that the defendant had knowingly sworn falsely in regard to the residence of these two men. Both McKenna and White testified as witnesses for the prosecution upon the trial. After McKenna had stated that he registered as living at No. 413 Henry street at the instance of the defendant, his examination proceeded as follows:

" Q. What did he say to you about registering and what did you say to him about registering first?

" Mr. Littleton: I object to the evidence upon the ground that the sole issue charged against this defendant is he made a false statement, not as to this man's age or qualifications nor as to his residence, but that he made a false statement in that he said this man had slept almost always in 413 Henry Street, and that is the sole issue of this affidavit.

" The Court: Bearing on whether or not he did, he has the right to ask this question.

" Objection overruled and defendant excepted.

" Mr. Jones: Answer this last question as to who spoke first. A. Mr. Cahill asked me did I register and I said no, I wasn't of age; he said, ' How many months do you lack of twenty-one?' I said ' six or seven.' He said, ' Go on and register anyway, I voted when I was sixteen years of age.'

" Mr. Littleton: I object and move to strike out the answer on the ground that it is utterly and entirely without any issue in this case or to any conception of the indictment in this case.

" The Court: Standing by itself it may be, but he can have all the conversation as bearing on the defendant's knowledge when he swore the man slept there if he knew he did not.

" Mr. Littleton: Your Honor doesn't seem to want to hear my objection.

" The Court: State your objection and don't think I do not, but I think it is perfectly competent.

"Mr. Littleton: I object to it on the ground that the sole issue to be submitted to this jury is whether this man swore falsely when he swore this man slept there always, and that is no part of this issue, but does tend to prove another charge and another crime against this defendant.

"The Court: I think it is pertinent and I will allow it.

"Defendant excepted."

White also testified under appropriate objection and exception in answer to the question how he came to register from 413 Henry street if he did not sleep there: "I stood on the opposite corner and Mr. Cahill came out with a cigar in his mouth — no, he did not have a cigar, he had his hands in his pockets. He came out and he said, 'Mr. White go up and register and if any harm comes to you I will see that you get out.'"

I think that the admission of this evidence was clearly erroneous; that it must have been exceedingly prejudicial to the defendant, and that the error in receiving it and in refusing to strike it out demands a reversal of this judgment, unless we are prepared to ignore and, indeed, virtually repeal the general rule of evidence in criminal cases which prohibits proof on the part of the prosecution of the commission of crimes other than that alleged in the indictment.

A conspicuous instance of the recent enforcement of this rule by this court is furnished by the case of *People* v. *Molineux* (168 N. Y. 264), in which its character and scope were fully discussed in the opinion of WERNER, J., who reviewed the numerous authorities by which it is supported in this and other states, and clearly classified the exceptions to it which have been recognized in the development of criminal procedure here and in other jurisdictions where the common law prevails. It is to be observed the defendant was indicted for false swearing and perjury; not for false registration or inducing others to commit that crime, and not for voting illegally. Yet the sole tendency of the testimony of McKenna and White, which has been quoted, was to establish the defendant's guilt of these other and different offenses. Upon no

theory of the doctrine of relevancy does it seem to me that the fact that the defendant had voted when he was only six-teen years of age can be deemed relevant to any of the issues which were litigated under the indictment and plea in this case. The defendant's declaration to that effect, assuming that he made it, merely tended to show that years ago he had committed another crime. To hold that evidence of this sort was not harmful to a man upon trial for a crime relating to the elective franchise would be, in my judgment, to ignore those influences which common experience shows to be powerfully operative upon the human mind. The only question which the jury were called upon to determine upon the trial was whether the defendant had sworn falsely in stating under oath that these men slept for two or three months at 413 Henry street, in the borough of Brooklyn, and the fact, assuming it to be such, that he had once voted illegally had no conceivable bearing on that question nor was the evidence properly receivable under any of the exceptions to the general rule recognized and so well stated in the *Molineux* case. It did not tend either to establish motive, intent, the absence of mistake or accident, a common scheme or plan embracing the commission of two or more related crimes or the identity of the defendant. It had no relation to the crime charged and its sole effect must have been to make the jury think that the defendant was a bad man whose antecedents indicated a willingness to commit any offense against the election laws.

The objectionable character of the testimony of these two witnesses to the effect that the defendant urged them to register and said he would take care of them if they did so is almost equally manifest. As has been pointed out, he was not on trial for the crime of false registration or inducing others falsely to register, and this evidence had no relevancy to the charge that he knowingly stated an untruth when he testified before the deputy superintendent of elections in reference to the sleeping place of these witnesses. I recognize to the fullest extent the wisdom of the statutory rule which prevails in this state that upon an appeal in criminal cases the court

must give judgment without regard to technical errors or defects or to exceptions which do not affect the substantial rights of the party. (Code Crim. Pro. § 542.) It seems clear to my mind, however, that the errors which I have discussed cannot justly be deemed technical and that they must have operated to the detriment of the defendant to such an extent as to deprive him of the fair trial to which he is entitled by law. Entertaining this view, I deem it my duty to vote for a reversal of the judgment. Upon the other question in the case I concur in the conclusions reached by Judge HISCOCK.

HAIGHT, VANN and WERNER, JJ., concur with HISCOCK J. ; CULLEN, Ch. J., and CHASE, J., concur with WILLARD BARTLETT, J.

Judgment of conviction affirmed.