THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.*
BENJAMIN REISS, Appellant.

First Department, December 16, 1938.

*Mordecai Konowitz* of counsel [*Samuel Segal* with him on the brief, attorney], for the appellant.

*Lawrence E. Walsh, Deputy Assistant District Attorney,* of counsel [*Thomas E. Dewey, District Attorney*], for the respondent.

CALLAHAN, J. Defendant was convicted of perjury in the second degree (Penal Law, § 1620-b). This crime is a misdemeanor (§ 1633), differing from perjury in the first degree (§ 1620-a), which is a felony, in that, in the lesser crime, the false testimony need not be material.

The basis of the offense charged herein was that defendant gave false testimony as a witness before an extraordinary grand jury. The falsity of the testimony was sufficiently established.

We find no reversible error was committed on the trial. We deem it unnecessary to dwell at length on any of the alleged errors assigned, other than the claim asserted by appellant that perjury could not be predicated upon his testimony before the grand jury, because the administration of the oath. to him by that body was illegal, in that appellant was compelled to be a witness against himself, in violation of the protection afforded him by the Fifth Amendment to the Constitution of the United States, and section 6 of article 1 of the New York State Constitution. Though the Fifth Amendment to the Federal Constitution may not be invoked by appellant, the language of the State and Federal provisions being identical, the cases construing the Federal Constitution merit attentive scrutiny. (*People* v. *Defore,* 242 N. Y. 13, 20; certiorari denied, 270 U. S. 657.) The State Constitution provides "nor shall he be compelled in any criminal case to be a witness against himself."

The basis of appellant's claim is that the grand jury inquiry was, in effect, directed against appellant, and he was compelled to testify as a witness concerning his own acts. The investigation being conducted by the grand jury was entitled "The People of the State of New York v. John Doe." That it was a general inquiry or an inquiry into a particular conspiracy is indicated in the following statement by the district attorney made in the presence of the grand jury when appellant was called as a witness: "Mr. Reiss, before we start I would like to inform you that this Grand Jury is investigating into a conspiracy in the electrical contracting industry. We are proceeding under Section 580 of the Code of Criminal Procedure. Anyone who is called before this Grand Jury without

signing a waiver of immunity in a proceeding conducted under that section is given immunity as to any transaction, matter or thing to which his testimony may relate. In other words, *if you testify truthfully* before this Grand Jury and your testimony discloses a crime, we can't prosecute you for that crime. Now it is your right to claim your privilege against self-incrimination and test out our right to question you. In other words, you do not have to take my word for it. If you want to claim your privilege against self-incrimination, you may do so as to any question, and then it is my duty to take you before Justice Pecora and he will rule whether or not you should answer the question."

It thus appears that the inquiry to the extent that it was a particular one related to a charge of conspiracy, and that the appellant was fully advised of that fact. His testimony was then given without any claim that his answers might tend to incriminate him. Though it does not appear that appellant was warned specifically that the inquiry was directed against him as a co-conspirator, he was president of an association known as " Master Electrical Contractors' Association, Inc.," and the questions asked clearly demonstrated that the association's action, as well as his own, was the subject of the examination. There were several questions indicating that the inquiry was also directed against others. Most of the questions asked, however, concerned the alleged payment of a sum of money by appellant to a contracting firm consisting of George Eiger and Hyman Nelson, to induce these contractors to refrain from bidding on a particular public improvement, known as the " Queens General Hospital Job." Appellant denied any such payment was made. Eiger and Nelson swore to the contrary. They were sufficiently corroborated by others. It was the testimony of appellant concerning his own connection with the payment of the money that was the basis of the perjury charge.

The transactions between appellant and Eiger and Nelson appear to have occured in 1934. The present investigation was conducted in 1938.

In addition to the alleged payments to Eiger and Nelson, appellant was interrogated concerning alleged payments to one Martin Epstein on another job. No date was referred to in connection with this transaction.

Appellant was also asked whether he had talked with one Louis Freed, an officer of the successful bidder on the Queens General Hospital job. Other questions concerning witness' relations with various contractors' associations were asked.

Section 584 of the Penal Law, which is found in the article (54) relating to conspiracy, provides as follows:

" § 584. Witnesses' privileges. No person shall be excused from attending and testifying, or producing any books, papers or other documents before any court, magistrate or referee, or before any joint legislative committee, upon any investigation, proceeding or trial, for or relating to or concerned with a violation of any of the provisions of this article, upon the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to convict him of a crime or to subject him to a penalty or forfeiture; but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may so testify or produce evidence, documentary or otherwise, and no testimony so given or produced shall be received against him upon any criminal investigation, proceeding or trial." (Added by Laws of 1910, chap. 395; amd. by Laws of 1931, chap. 774, in effect Aug. 28, 1931.)

Section 1631 of the Penal Law, which relates to perjury, provides:

" § 1631. Witnesses' testimony. The sections of this chapter which declare that evidence obtained upon the examination of a person as a witness shall not be received against him in a criminal proceeding, do not forbid such evidence being proved against such person upon any charge of perjury committed in such examination."

Appellant was required, by section 584, to testify regarding acts of co-conspirators, even though his evidence might tend to reveal that he had committed a crime. In return for doing so, he was granted complete immunity on account of anything concerning which he testified, and the immunity statute provided that no testimony so given could be used against him upon any criminal proceeding. The immunity thus granted was at least as broad as the protection afforded by the Constitution.

It would seem plain, under the circumstances, that an oath could be legally administered to him. (*Hale* v. *Henkel,* 201 U. S. 43.)

The immunity granted appellant covered any of his past offenses that the inquiry might reveal or relate to, at least in so far as any present criminal liability might arise; but, if the criminality has already been taken away, the constitutional protection ceases to apply. (*Hale* v. *Henkel, supra.*) It would not, however, prevent his testimony being used to establish the crime of perjury, if the testimony given was false, in any case where an oath might be legally administered. (*Glickstein* v. *United States,* 222 U. S. 139.)

The *Glickstein* case (*supra*) involved a charge of perjury alleged to have been committed in bankruptcy proceedings, while the defendant bankrupt was under oath. Subdivision 9 of section 7 of the Bankruptcy Act of 1898 (U. S. Code, tit. 11, § 25, subd. 9)

provided that the bankrupt must submit to an examination concerning his business and property, but that no testimony given by him shall be offered against him in any criminal proceeding. The court held that, nevertheless, his testimony might be used as a basis of a criminal charge of perjury, if false. In an opinion delivered by Mr. Chief Justice WHITE, for the United States Supreme Court, two propositions were said to be established as not open to controversy. They were stated as follows:

" 1st. It is undoubted that the constitutional guarantee of the Fifth Amendment does not deprive the law-making authority of the power to compel the giving of testimony even although the testimony when given might serve to incriminate the one testifying, provided immunity be accorded, the immunity, of course, being required to be complete; that is to say, in all respects commensurate with the protection guaranteed by the constitutional limitation. The authorities which establish this elementary proposition are too numerous to be cited, and we therefore simply refer to a few of the leading cases on the subject. *Counselman* v. *Hitchcock*, 142 U. S. 547: *Brown* v. *Walker*, 161 U. S. 591; *Burrell* v. *Montana*, 194 U. S. 572, 578; *Jack* v. *Kansas*, 199 U. S. 372; *Ballmann* v. *Fagin*, 200 U. S. 186, 195; *Hale* v. *Henkel*, 201 U. S. 43, 66, and *Heike* v. *United States*, 217 U. S. 423.

" 2nd. As the authority, which the proposition just stated embraces exists, and as the sanction of an oath and the imposition of a punishment for false swearing are inherently a part of the power to compel the giving of testimony, they are included in that grant of authority and are not prohibited by the immunity as to self-incrimination. Of course, this proposition is essentially the resultant of the first, since unless it be well founded the first also must be wanting in foundation. This must be the result, as it cannot be conceived that there is power to compel the giving of testimony where no right exists to require that the testimony shall be given under such circumstances and safeguards as to compel it to be truthful. In other words, this is but to say that an authority which can only extend to the licensing of perjury is not a power to compel the giving of testimony. Of course, these propositions being true, it is also true that the immunity afforded by the constitutional guarantee relates to the past and does not endow the person who testifies with a license to commit perjury."

The court held that, although there was no express provision in the Bankruptcy Act authorizing a prosecution for perjury for false swearing under the command of the section, nevertheless such prosecution might be had.

While in the case cited the testimony was given in a bankruptcy proceeding and not a criminal case, the reasoning should be applicable to any case wherein it is legal to call a witness without violating constitutional restrictions.

It is our view that sections 584 and 1631 of the Penal Law are not in conflict with the provisions of the New York State Constitution which afford protection against self-incrimination, at least as to an inquiry where the alleged offenses of others are being examined into, though the others be co-conspirators with the witness.

Appellant relies, in the main, on the cases of *People* v. *Gillette* (126 App. Div. 665); *People* v. *Bermel* (71 Misc. 356), and *People* v. *Cahill* (193 N. Y. 232).

In *People* v. *Gillette* (*supra*) the defendant had been convicted of perjury. On appeal to this court the judgment of conviction was reversed on three grounds. Mr. Justice McLAUGHLIN, in writing for the reversal, held, as a first ground, that Gillette had been compelled to testify against himself in violation of his constitutional rights. But one other justice concurred in that view. A second ground for reversal was that the indictment was improper in form, and a third that the indictment was not sustained by the evidence. The other justices concurred in the reversal, but based their decision on the second and third grounds assigned.

In that case the testimony was given without the cloak of any immunity. It was there stated that because Gillette had been examined concerning matters affecting himself and others, the proceeding was in fact directed against him and, therefore, it was illegal to call him as a witness. What was said, however, must be read in the light of the fact that no immunity was afforded by statute. That case was decided two years before the passage of section 584 of the Penal Law.

In *People* v. *Bermel* (*supra*) the defendant had been indicted for perjury alleged to have been committed before a grand jury in 1908. The indictment was found in 1910, at which time the defendant was called again before the grand jury which found the indictment, and examined concerning the alleged falsity of the testimony which he gave in 1908. The court found that the second inquiry was one against defendant directly as an offender charged with perjury, and that the indictment was based, at least in part, on the evidence defendant was compelled to give concerning the falsity of his earlier testimony. Under the circumstances, the indictment was found defective, because of the receipt of the illegal evidence. Defendant there was not being questioned concerning acts of co-conspirators, but solely his individual offense.

In *People* v. *Cahill* (*supra*) a conviction for perjury was upheld. There the testimony found to be false was given under the protection of an immunity statute. The perjury was based on an alleged false affidavit entitled " People v. Joseph J. Cahill." It was made, however, in an investigation concerning the false registration of two persons other than Cahill (McKenna and White), as well as the investigation of his own registration. The court pointed out that false registration was an individual crime as to each offender. The affidavit had been made in a proceeding before the Superintendent of Elections. The Court of Appeals stated that such proceedings were not of such a character as to constitute a criminal case. It then went on to say that, even if it be assumed that the investigation was a criminal case, the alleged false testimony for which the conviction had been had was to be regarded as given against McKenna and White rather than against Cahill himself. The false statements, with respect to which Cahill was tried and convicted, related solely to his testimony concerning McKenna and White. The court said (at p. 238):

" The real and precise question, therefore, seems to be whether the validity of his oath to statements relating to White and McKenna, which he could be compelled to make, is destroyed because at the same time he was required to verify other statements relating to himself, and which it will be assumed he could not have been forced to make.

" We think that it was not, and that to hold otherwise under the circumstances of this case would be going beyond that which has been held in any of the cases called to our attention."

After reviewing the authorities on the subject the court further stated (p. 239):

" Thus it appears in each one of the cases that the question involved was as to compelling a person to give evidence in regard to an offense alleged to have been committed by the witness. Here, as already sufficiently appears, the statements related to apparently independent offenses committed by other people.

" If in the light of what was subsequently testified to on the trial, it should be contended that appellant was in fact implicated in the illegal registration of White and McKenna and that, therefore, he should not have been compelled to give evidence in their cases, two answers may be made.

" In the first place, we have no doubt that he secured immunity against any harm from such testimony, which was as broad as the protection afforded by the constitutional provisions to which we have referred. * * *

" Secondly, if appellant felt that his testimony in regard to White and McKenna might disclose criminal conduct on his own part from which he was not otherwise protected, it was his right and duty to decline to answer the questions, which he did not do."

While it appears that in the *Cahill* case (*supra*) the crimes were separate or individual ones, and not in the nature of a conspiracy, as in the present case, it is to be noted that the holding was to the effect that, even if the witness had been implicated in the crimes under investigation, he was protected by the immunity granted. The *Cahill* case (*supra*), therefore, would appear to be authority to the effect that the protection guaranteed by the Constitution against being compelled to testify is not infringed by calling a witness when the acts of others, as well as those of the witness, are being investigated.

The condemnation that has been asserted against the practice of calling the accused as a witness in the very proceeding in which the charge against him is being investigated (*People* v. *Ferola*, 215 N. Y. 285), if it has any relation to cases where immunity is intended to be and is granted, would not seem to be applicable to an inquiry directed in good faith towards establishing the commission of crimes by others.

Appellant herein complains that the prosecution for perjury is based upon the answers given to questions concerning his own acts. These, however, might well be the basis on which further inquiry might be made to establish the conspiracy. It might also be that the district attorney discontinued his examination when appellant's answers indicated that he was not willing to tell what the district attorney believed to be the truth. In any event, having answered the questions, the witness cannot now assert protection against a perjury charge, where the evidence given was willfully false.

The appellant also asserts that the investigation in which he was called was instituted solely to entrap him. We have no evidence to support that claim in the present record. When such a situation is revealed it will be adequately dealt with. We would not be justified in upholding such a claim solely because the testimony, in so far as the examination was pursued, referred to offenses which, in the main, appear to have been barred by the Statute of Limitations.

As indicated in the *résumé* of the testimony, the examination herein was directed against the acts of co-conspirators, and merely being compelled to appear and be sworn was no violation of appellant's constitutional rights, when complete immunity was granted him. That immunity, however, did not extend to a new offense of perjury committed on the examination.

The judgment of conviction should be affirmed.

GLENNON, DORE and COHN, JJ., concur; MARTIN, P. J., dissents and votes to reverse and dismiss the information.

Judgment affirmed.