In the Matter of JOHN G. PARSONS, as Foreman of the Grand Jury of an Extraordinary Special and Trial Term of the Supreme Court, Petitioner, against IRWIN STEINGUT, Respondent.

Supreme Court, Extraordinary Special and Trial Term, Albany County, August 17, 1945.

*Nathaniel L. Goldstein, Attorney-General (Hiram C. Todd, Sherman S. Rogers* and *Lester G. Rubenstein* of counsel), for petitioner.

*George R. Fearon* and *William Weisman* for respondent.

IMRIE, J. This is a motion on order to show cause why the respondent, Irwin Steingut, should not be punished for criminal contempt of court under subdivision 5 of section 750 of the Judiciary Law of the State of New York. The moving affidavit was made by John G. Parsons, foreman of the Grand Jury of the Extraordinary Special and Trial Term appointed by proclamation of the Governor issued December 20, 1943, supported by transcripts of certain portions of the grand jury minutes, referred to as Exhibits B and C. The affidavit recites a unanimous resolution of the grand jury directing the foreman to initiate this proceeding and says, in part, " The grand jury deems it necessary and relevant to its further inquiry into the matters being investigated by it pursuant to the powers conferred upon it by the Proclamation of the Governor, dated December 20, 1943, hereinabove referred to, that true, complete and responsive answers be given to all questions asked of said Irwin Steingut before the grand jury and that he furnish to the grand jury all of the information which he has been directed to present to the grand jury."

The respondent had appeared and testified before the grand jury on eight occasions; previous to his examination he executed the waiver of immunity provided by section 6 of article I of the Constitution of the State of New York.

On this motion he rests upon the record of the moving papers and through counsel urges their insufficiency as a basis for a finding of contempt. On the hearing he did not avail himself of the opportunity to produce any testimony or evidence to meet the charges in the moving affidavit nor did he make any offer or effort to purge himself of the alleged contempt, which rests upon the contention on the part of the People that his testimony before the grand jury was so evasive, incredible

and untrue as to amount to a refusal to answer legal and proper questions. The charges upon which that contention is made fall into two parts.

The first has to do with his testimony as to the source of the sum of $60,000 loaned to or invested with one Max Kalik in 1939. Respondent stated that this was a portion of a sum of money given him by his stepfather, Simon Steingut, just prior to the latter's final illness, the gift to be effective in the event of the latter's death. That gift, oral in character, was of all the money in the office safe of the elder Steingut. It is stated to have been made in the presence of Louis Levene, the latter's friend and attorney, whose affidavit concerning the transaction is a part of the record. Upon the opening of the safe after the stepfather's death respondent testified that he there found the sum of $96,000. His testimony went into detail as to the manner in which he handled these funds from 1919, after Simon Steingut's death, for a long period of years.

It is submitted to the court that this testimony, on its face, was so incredible and untrue as to require the finding that it was false in its entirety and to amount to a refusal to answer.

While the fact that a criminal charge may be lodged and a trial held thereon is not a bar to the punishment of the witness for contempt for false testimony, the court does not, in passing on matters of criminal contempt, substitute that proceeding for a criminal trial before a jury. There should be something in the record, either out of the mouth of the witness himself, or by way of extrinsic proof, to cast doubt upon the testimony of the witness and to require it to be held that the testimony was false and given with an obstructive, evasive or contumacious intent, unless it appears to be so obviously false that all reasonable intendments should indicate its falsity and make it absolutely palpable and clear beyond the possibility of a doubt that it is untrue. (*Ex parte Hudgings,* 249 U. S. 378; *Matter of Finkel* v. *McCook,* 247 App. Div. 57; *United States* v. *Appel,* 211 F. 495.)

It is not sufficient that inferences may be drawn from all the testimony concerning this transaction that the testimony is untrue. The untruthfulness of the statement by the respondent may be a possible inference, but a necessary inference it certainly is not. (*United States* v. *Appel, supra; People ex rel. Falk* v. *Sheriff of N. Y. County,* 258 N. Y. 437, 439.)

Standing by itself as a specification of contempt, I hold that the testimony with reference to the stepfather's gift is not sufficiently shown to have been false to call for the punishment of the respondent for contempt by reason thereof.

The second charge arises out of the manner in which respondent has testified concerning an alleged excess of expenditures by himself and his wife above known and admitted income and receipts during the past ten years amounting to approximately $184,000, or a sum nearly as great as the known receipts. At the hearing of April 24, 1945, he was confronted with statements of such receipts and expenditures and asked to explain the sources of the funds for such excess. He was then advised of the reason for the inquiry. True, the question was not then pressed, in view of the fact that it was agreed that time should be given him to obtain an accountant who might analyze and check these figures. There was, for this reason, a delay in his further appearance until July 18, 1945, when he again underwent a lengthy examination on this subject.

The objection is raised that there was no later direct question as to the source of the moneys for these excess expenditures. A further objection is raised that there is no proper proof before me as to the correctness of the statement of expenditures, which involves a vast number of items.

These objections beg the question under consideration. It is not so much the failure to answer specific questions which must be the basis of my determination, but rather a consideration of the whole text of the examination and a consideration of " answers " in relation to each other. (*Matter of Finkel* v. *McCook, supra.*)

Moreover, broad considerations of sound public policy dictate the conclusion that the inquiry on the part of the grand jury into respondent's financial affairs was and is relevant, aside from the rule that the grand jury rather than the court may determine the question of relevancy. (*Matter of Greenleaf,* 176 Misc. 566, affd. 291 N. Y. 690.)

" It should not be forgotten that ' a public office is a public trust,' and all public officers should so conduct their official duties as to be like Caesar's wife, ' above suspicion ' of irregularities in the administration of their offices, even though such irregularities may not, under the law, constitute such wilful misconduct, corruption, or maladministration as to merit removal from office." (*State ex rel. Fletcher* v. *Naumann,* 213 Iowa 418, 431.) The late President Roosevelt, as Governor of this State, expressed this rule, in a proceeding for the removal of a sheriff, in these words, " As a matter of general sound public policy, I am very certain that there is a requirement that where a public official is under inquiry or investigation, especially an elected public official, and it appears that his scale of living or the total

of his bank deposits far exceeds the public salary which he is known to receive, he, the elected public official, owes a positive public duty to the community to give a reasonable or credible explanation of the sources of the deposits, or the source which enables him to maintain a scale of living beyond the amount of his salary.'' (Public Papers of Governor Franklin D. Roosevelt [1932], p. 286.)

The application of such a rule of public policy makes it relatively unimportant whether or not there is before me sound proof of the correctness of the items or totals of the figures of disbursements. Three months should have been ample time for a sufficient analysis of the records upon which the sworn testimony as to the correctness of the items and the evidentiary exhibit of the expenditures were based, to the end that the witness could testify directly and responsively as to their incorrectness, or as to a sufficient number of items or groups of items, to discredit the exhibit; in other words, to '' explain ''. This he did not do.

It would unnecessarily lengthen this opinion to set forth in detail answers of the witness which subject him to the conclusions which I have reached. As already stated, the point of the inquiry was to require the witness to explain the sources of funds necessary to make the excess of expenditures specified in the complaint of the grand jury. This he made no effort to do.

In the light of respondent's failure to explain the expenditures or to successfully attack the credibility of the exhibit summarizing them, it is my opinion that it may reasonably be said that his repeated claim of inability to do so and his claim of ignorance of the source of payment of various items of large expenditures called to his attention was a pretense on his part of ignorance of facts which obviously would have been known to anyone who had sufficient intellect to perform the most ordinary duties of life (*In Re Gitkin*, 164 F. 71), and that the evasion of the respondent as disclosed in particular through the examination on July 18th was palpable, clear and persistent In the common experience of mankind, especially those not of great wealth, expenditures of the amounts disclosed for personal luxury items such as fur coats and jewelry are apt to be remembered as milestones in one's life, and the profession of lack of memory as to such items, as well as numerous others, bears the stamp of incredibility. Respondent's vagueness and uncertainty in his replies to numerous questions in the final examination are in sharp contrast with the clarity of his

memory as to the details relating to the gift from his step-father and his subsequent transactions with relation to it.

After careful consideration I reach the conclusion that the witness was so palpably evasive in his answers to the questions before the grand jury as to make it tantamount on his part to a refusal to answer proper and legal interrogatories as required by the statute and that his conduct in respect to the examination was calculated to impede and defeat the investigation of the grand jury into his financial affairs; that by reason thereof the witness is in criminal contempt of court.