THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JOHN DE FEO, Appellant.

First Department, July 1, 1954.

*Harris B. Steinberg* of counsel (*Jesse Climenko, Martin I. Shelton* and *Richard A. Green* with him on the brief; *Direnzo & Martoccia,* attorneys), for appellant.

*Leonard Reisman* of counsel (*Richard G. Denzer* and *Jack M. Cotton* with him on the brief; *Frank S. Hogan, District Attorney*), for respondent.

BREITEL, J. De Feo, a witness before a Grand Jury, appeals from a determination holding him guilty of contempt (Judiciary Law, § 750, subd. A, par. 5), for having given evasive answers, tantamount to a refusal to answer, to legal and proper interrogatories (*Matter of Finkel* v. *McCook,* 247 App. Div. 57, affd. 271 N. Y. 636).

Of the contentions advanced on the appeal, two are substantial. The first is that the De Feo's answers were not evasive, and therefore, not contemptuous or contumacious. The second is that De Feo's privilege against being compelled to testify against himself was violated, and therefore, no proceeding for contempt may lie, his examination being invalid for all purposes.

It is our view that on these issues appellant should fail and that the order adjudicating De Feo in contempt should be affirmed.

Attention will first be directed to the content of the witness' testimony. De Feo and his cousin, Martoccia, shared equally the ownership of a corporation, Cardinal Agency, Inc., which engaged exclusively in the brokerage of group insurance under union welfare programs. The corporation was organized in 1950 following the enactment in the prior year of the State's Disability Benefits Law for the protection of employees. It prospered at a marked rate. For the fiscal years ending March 31st it had the following gross incomes:

| | |
|---|---|
| 1951 | $75,000. |
| 1952 | 186,000. |
| 1953 | 295,000. |

For the related calendar years the books of account recorded cash withdrawals for purposes described no more particularly than " office expense ", " entertainment ", " travel " and " promotion ", in the following gross amounts:

| | | |
|---|---|---|
| 1951 | $28,724.03 | |
| 1952 | 107,282.33 | |
| 1953 | 34,492.00 | (5 months) |

The Grand Jury was engaged in a " John Doe " investigation into alleged " kickbacks " or rebates of insurance premiums to labor union officials and others in the sale of insurance for the protection of union members. These acts would constitute violations of section 380 of the Penal Law and of sections 5 and 113 of the Insurance Law.

The scope of the questioning covered the cash withdrawals for the purpose of ascertaining whether they in fact were expended for the designated purposes or whether they, or a substantial part of them, were devoted to payment of " bribes " to union officials or others with influence in unions, or to persons connected with insurance companies. Specific questioning was directed to the withdrawals of cash that represented rounded percentages of commission earnings and that occurred in close sequence to the receipt of such earnings.

In regard to none of the years could the witness give details of expenditures, whether of time, place, occasion or persons present. Despite the fact that these expenditures were the principal ones made by the corporation there were no detailed records or vouchers, and no details of distribution. The witness could merely recite a few names of persons entertained, a few places of entertainment involved, a few occasions for travel, but never in relationship, and always with the characterization of probability or even possibility and never with the assertion of certainty or reasonable degree of assurance. In instance after instance the witness offered his speculations as to events or expenditures, whether they were supposed to have occurred in an earlier year or in the last year. The technique was the not uncommon one of avoiding giving information and yet sidestepping the perils of perjury. This indeed is the essence of the technique of the evasive answer, which is tantamount to a refusal to answer, for which a proceeding to punish for contempt may lie. (*Matter of Finkel* v. *McCook,* 247 App. Div. 57, affd. 271 N. Y. 636, *supra; United States* v. *McGovern,* 60 F. 2d. 880, certiorari denied 287 U. S. 650; *Schleier* v. *United States,* 72 F. 2d 414; *United States* v. *Appel,* 211 F. 495.)

Lack of memory or poor memory in specific instances is understandable in any context of protracted examination concerning many transactions occurring over an extended period of time. Consistent lack of memory or recollection of all transactions for a recently passed period relating to large and significant expenditures covering a principal activity of a business is not understandable, except as a deliberate and contemptuous evasion

of the questions put. This is particularly true when many of the cash withdrawals about which the witness was questioned were in three and four figure sums, some rounded and some not. And the situation is all the clearer when it is noted that the business involved was a two-man corporation with some office employees.

Of course, a different question from that involved here is one where the witness gives an explanation but an incredible one. Then the remedy, it has been said on occasion, is to be by prosecution for perjury, or none at all. (*Blim* v. *United States,* 68 F. 2d. 484; *Matter of Steingut* v. *Imrie,* 270 App. Div. 34, revg. *sub nom. Matter of Parsons* v. *Steingut,* 185 Misc. 323.) But in the instant case the technique is not so much that of palpably false explanation, as it is that of no explanation. While it is true that as a practical matter it is difficult — even impossible — to give no explanation and still go through the form of answering questions, without injecting falsehoods, it is not out of the power of the court to apply its sanction, if indeed the witness successfully avoids answering by the evasive maneuver. (*Matter of Finkel* v. *McCook,* 247 App. Div. 57, affd. 271 N. Y. 636, *supra; United States* v. *McGovern,* 60 F. 2d 880, *supra.*)

In *Matter of Finkel* v. *McCook,* this court said (p. 63):

" It is not our intention to hold, however, that all false swearing may be punished as a contempt. Where there is an issue as to the falsity of the testimony, the conflicting evidence should not be passed on in a contempt proceeding but should be left to the criminal proceeding, where the contemner is entitled to a jury trial. Sound public policy requires that the offender should be left to the criminal law.

" There is a distinction between the untruthful statement which does not clearly appear to be such from the face of the record but is uncovered only with the aid of extrinsic evidence and testimony which is so plainly inconsistent, so manifestly contradictory and so conspicuously unbelievable as to make it apparent from the face of the record itself that the witness has deliberately concealed the truth and has given answers which are replies in form only and which, in substance, are as useless as a complete refusal to answer."

Wherever one turns in an examination of De Feo's testimony one is confronted with the simplest of formulas. He says in effect, whatever the corporation or I disbursed was for a business purpose, but I cannot tell when, where or to whom or for

what as to any instance, whether it be a small sum or $2,000 in round figures. This amply meets the test of the decided cases and De Feo was properly found to have continuously and contemptuously given evasive answers to the questions put to him.

The second point raised by appellant is that he may not be prosecuted for a contempt because his testimony was elicited in violation of his constitutional privilege not to be compelled to testify against himself (N. Y. Const., art. I, § 6). Until the enactment in 1953 of section 2447 of the Penal Law (L. 1953, ch. 891) it was clear that one who was required to testify before a grand jury concerning the acts of others, and in the process incriminates himself, has not had his privilege violated unless he first assert it and it is overruled. On the other hand, if the witness was examined concerning his own acts looking to a criminal prosecution against him for those acts, his privilege was violated, even though he fail to assert or claim his privilege. (*People* v. *Gillette,* 126 App. Div. 665; *People* v. *Bermel,* 71 Misc. 356; *People* v. *Seaman,* 174 Misc. 792.) The effect of the violation of the privilege was that the witness' testimony might not be used to ground an indictment for the substantive crime of which he was accused nor might he be prosecuted for any contempt or perjury arising from the testimony elicited in violation of the witness' constitutional privilege (*People* v. *Gillette, supra.*) He did not thereby gain an immunity from prosecution for the substantive crime if an indictment was thereafter obtained on proper and competent testimony. (*People ex rel. Coyle* v. *Truesdell,* 259 App. Div. 282; *People* v. *Bermel, supra.*)

The rule in the *Gillette* case has not been free from problems. It is not always clear whether a witness is a prospective defendant or not. One may infer that this was one of the background facts that colored the action of the Legislature in enacting section 2447 of the Penal Law to which reference will be made later. In this connection it is important to distinguish between the uses to which testimony taken in violation of a privilege may be used. The *Gillette* case did not distinguish among these possible uses. It treated admissions or confessions so obtained and used in a prosecution for the substantive crime, and prosecution for contempt and perjury alike. All uses were invalid. The fact is that it is repugnant for testimony so obtained in violation of a privilege to be used against the witness in a prosecution for the substantive crime. That goes to the essence

of the privilege. On the other hand, the privilege was never intended to protect the contemner or the perjurer. But, be that as it may, the rule in the *Gillette* case, expressed by a much-divided court, had become the recognized principle in this area. (But for a contrary view, see *People* v. *Buffalo Gravel Corp.*, 195 N. Y. S. 940, 949; cf. *United States* v. *Murdock*, 284 U. S. 141; *Rogers* v. *United States*, 340 U. S. 367, and 8 Wigmore on Evidence [3d Ed.], § 2276.)

The District Attorney claims that De Feo was not a prospective defendant. We cannot agree. He asserts that it is apparent that De Feo was being questioned in order to obtain evidence against his associate and against those who accepted rebates and " bribes ". He asserts further that any doubt as to De Feo's status as a witness is removed by the conferring of immunity on the witness pursuant to section 2447 of the Penal Law, which purportedly occurred on the fourth day of the testimony. Whether De Feo was a prospective defendant is not to be determined by a subjective examination of the mind of the prosecutor. The scope of the inquiry made De Feo a possible defendant. The questions addressed to him related to acts of his, denominated criminal under the Penal Law. For the purpose of applying the constitutional privilege De Feo was a prospective defendant. This is not a situation where it is not clear who are the alleged wrongdoers or who are those who know the facts. In such case the prosecutor may not know who are prospective defendants. In this instance, the record is clear, De Feo was on the target even if perchance he was not to be the bull's eye.

Whether De Feo's privilege was violated or not requires a further consideration of what took place, and particularly the effect of section 2447 of the Penal Law enacted in 1953. He was called as a witness in this inquiry, which had no named real defendants. He was not asked to and he did not sign any waiver of immunity. At no time did he assert or claim any constitutional privilege until the holding of the fourth session for the taking of testimony. This was on December 4, 1953. From the record it appears that the witness had had a discussion with the Judge presiding over the Grand Jury Term. Following that, the foreman of the Grand Jury suggested to the witness that he had not claimed his privilege. The witness asked to speak with his attorney. This request was granted. The witness returned and claimed his privilege. Thereupon the foreman advised him: " On advice of Judge STREIT I grant

you immunity for the crimes of conspiracy and for the crime of bribing labor officials''. The prosecutor requested and the witness was then directed to answer the questions.

The witness once again was uninformative about the cash withdrawals that had been made, and these questions and answers must be read in the light of all his testimony. Moreover, an added fillip was present. There were entries in the corporation's books charged to '' commission transfer ''. As to these De Feo claimed they were not a division of commissions but expenditures for promotion and entertainment. At the close of the session the Grand Jury voted to cite the witness for contempt.

Section 2447 of the Penal Law was enacted in 1953 at an Extraordinary Session of the Legislature. (L. 1953, ch. 891.) It provides:

'' § 2447. *Witnesses' immunity.* In any investigation or proceeding where, by express provision of statute, a competent authority is authorized to confer immunity, if a person refuses to answer a question or produce evidence of any other kind on the ground that he may be incriminated thereby, and, notwithstanding such refusal, an order is made by such competent authority that such person answer the question or produce the evidence, such person shall comply with the order. If such person complies with the order, and if, but for this section, he would have been privileged to withhold the answer given or the evidence produced by him, then immunity shall be conferred upon him, as provided for herein.

'' 2. ' Immunity ' as used in this section means that such person shall not be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which, in accordance with the order by competent authority, he gave answer or produced evidence, and that no such answer given or evidence produced shall .be received against him upon any criminal proceeding. But he may nevertheless be prosecuted or subjected to penalty or forfeiture for any perjury or contempt committed in answering, or failing to answer, or in producing or failing to produce evidence, in accordance with the order, and any such answer given or evidence produced shall be admissible against him upon any criminal proceeding concerning such perjury or contempt.

'' 3. ' Competent authority ' as used in this section means: * * *

" (c) The grand jury before which a person is called to answer questions or produce evidence, when such grand jury is expressly requested by the prosecuting attorney to order such person to give an answer or produce evidence; * * *

" 4. Immunity shall not be conferred upon any person except in accordance with the provisions of this section." Its enactment was recommended by the State Crime Commission. The commission, in recommending the statute, said: " The Commission also recommends that legislation be adopted to accomplish the following: A. Require that before immunity may be obtained: (1) the witness must in good faith claim his privilege against self-incrimination; (2) he must be directed by competent authority to testify, notwithstanding his claim of privilege; and (3) he must testify pursuant to such direction." (New York State Crime Comm. [3d Report, 1953], p. 15; N. Y. Legis. Doc., 1953, No. 68, p. 15.)

The new statute provides for the conferring of immunity only where the witness claims his privilege, and in the case of a grand jury inquiry, where the prosecutor requests that immunity be granted and the witness is then directed to answer questions or produce evidence. The immunity thereupon granted is broad, namely, it applies to any prosecution for any crime concerning which testimony is given. Moreover, the statute provides that immunity may be granted only in accordance with the statute. (See *People* v. *Breslin,* 306 N. Y. 294.)

It is apparent that the statute sets up a new scheme in connection with the claim of privilege and the conferring of immunity. Under the old immunity statutes immunity was automatic if the witness testified in an investigation of matters to which the statutes added an immunity provision. (*People* v. *Cahill,* 193 N. Y. 232; *Matter of Doyle,* 257 N. Y. 244; *People* v. *Reiss,* 255 App. Div. 509, affd. 280 N. Y. 539.) It is this automatic, and what occasionally might be accidental or misguided conferring of immunity, that the new statute is designed to avoid. (See Third Report of New York State Crime Comm.)

Under the statute the privilege must first be claimed. If it is, the immunity is conferred, and the one conferred is as broad as the peril (§ 2447, subd. 2; *People* v. *Breslin, supra; Matter of Doyle, supra*).

In the instant case the foreman of the Grand Jury referred only to immunity from prosecution for crimes of bribery and conspiracy. But he had no power to limit the immunity. The

statute was controlling. Once the privilege had been claimed, and the witness was directed to answer under the statute with the promise of immunity, he was protected from any prosecution that might be based on the matters in inquiry. Surely, if De Feo were now indicted for a crime, other than bribery or conspiracy, arising from matters concerning which he was questioned on December 4, 1953, or even on the three occasions before that date, the indictment would have to fail because of what occurred on December 4th. That is conclusive on whether complete immunity was successfully conferred on the witness.

But still another problem remains in this branch of the case. For three sessions De Feo testified without benefit of immunity. What is the effect of the immunity granted on the fourth session? In the first place, it is clear, as has already been said, that the new statute sets up an entirely new procedure, which requires a claim of privilege by one who seeks constitutional protection. Thus, in the Third Report of the New York State Crime Commission, it was stated (p. 15): " There are some 46 separate statutory provisions under which a witness may obtain immunity by giving testimony. Under some, no claim of privilege is required. Most of the more recent ones are carefully drawn and require, as all of them should, that the witness must first claim his privilege, that he must then be directed by the court or other authority to answer, and that he must then give his testimony. (See Law Revision Commission Report, 1943 Legis. Doc. No. 65(b), pp. 33–59.) Even in some of these newer statutes, the power to give immunity by directing a witness to answer is not clearly committed and limited to those who should be entrusted with this great responsibility."

To that extent, namely, of requiring the assertion of privilege, the statute would appear to have the effect of overriding the rule in *People* v. *Gillette,* 126 App. Div. 665 (*supra*). It would make little sense to require a claim of privilege to invoke an immunity statute and to dispense with the claim where, depending upon the facts, the witness will later urge that he was a prospective defendant and therefore was compelled to testify against himself. Immunity statutes have no reference except to prospective defendants, albeit the probability of the prospect may vary from case to case. On this view, De Feo's testimony, taken in advance of the conferring of immunity upon him, since he did not claim a privilege which was overridden, was sufficient for basing a proceeding for contempt or for perjury.

But there is added reason why De Feo's evasive testimony may not escape the sanction of the court. The only reason that under the *Gillette* case (126 App. Div. 665, *supra*), neither contempt nor perjury would lie for testimony taken in violation of the privilege was not because there was any infirmity in the testimony as such, but because as a matter of public policy no use was to be permitted of testimony taken in violation of the constitutional safeguard. The disabling effect of that safeguard could be removed by waiver or the granting of immunity. Either could occur at any time. When it did, the disabling effect was removed. (See *People ex rel. Jannicky* v. *Warden of City Prison,* 231 App. Div. 131, affd. 255 N. Y. 623; see, also, 8 Wigmore on Evidence [3d Ed.], § 2276, p. 452.) De Feo was always obligated to testify truthfully, but so long as his privilege might have been violated, that testimony could have no standing. When the privilege ceased to be violated, either because it was waived or because immunity was granted, there was nothing to stop the use of that testimony. By parallel reasoning, if the testimony now usable for other purposes revealed perjury or contemptuous evasion, it would not be reasonable to withhold sanctions therefor.

In reaching these conclusions we are not untroubled. The principles, sound at the time, explored in *People* v. *Ferola* (215 N. Y. 285), condemning the calling of prospective defendants to testify against themselves, perhaps unwittingly, before the Grand Jury, are still sound. The better procedure when calling a witness such as De Feo is for the prosecutor either to obtain a waiver of immunity or to decide to invoke the provisions of section 2447. In the unlikely prospect that the witness will neither sign a waiver of immunity nor claim his privilege, he should, if an ambiguous, but not invalid, status is to be avoided, be warned, if he is a prospective defendant, that he is entitled to claim his privilege. This would apply only where the witness has refused to sign a waiver of immunity and the prosecutor is on notice that the witness fears prosecution.

In summary, De Feo was properly found to have answered the questions put to him, evasively in contempt and contumacy, and there is no bar to the proceeding. There is no bar because he failed to claim a privilege at any time. And in any event, the effect of the granting to him of immunity at the fourth session was sufficient, if needed, to remove any invalidity to the proceedings theretofore arising from the constitutional privilege and its breach. On this view, proceedings before

grand juries are analogized to those upon a trial or other inquiry; the question of privilege must be invoked before it will have the effect of invalidating testimony taken. This, it is submitted, is the necessary effect, if not the intention, of the new statute providing for immunity. No constitutional impediment is perceived because the privilege is fully enforced so long as the witness is free to refuse to answer until given immunity (*People* v. *Breslin,* 306 N. Y. 294, *supra*), and the Legislature has complete power to regulate the manner in which the privilege is to be invoked, in the same way that it may condition the grant of immunity, provided the witness never loses the alternative of privilege preserved or immunity granted.

The order should be affirmed.

PECK, P. J. (concurring). I concur to affirm upon the ground that appellant was given an all embracing immunity by operation of the statute, and immunity having been accorded, any exemption from a perjury prosecution or contempt proceeding which he otherwise might have enjoyed was removed. The court is not required under the circumstances to countenance contumacy. It is not necessary in my view to decide whether the recent immunity statute in effect overrides *People* v. *Gillette* (126 App. Div. 665).

COHN, J. (dissenting). Appellant was adjudged guilty of criminal contempt of court (Judiciary Law, § 750, subd. A, par. 5) by a Judge of the Court of General Sessions, for willful refusal to answer legal and proper interrogatories before a Grand Jury and was sentenced to two thirty-day terms in City Prison, the terms to run concurrently.

Section 750 (subd. A, par. 5) of the Judiciary Law, insofar as relevant reads:

" A. A court of record has power to punish for a criminal contempt, a person guilty of any of the following acts, and no others: * * *

" 5. Contumacious and unlawful refusal to be sworn as a witness; or, after being sworn, to answer any legal and proper interrogatory."

The mandate of commitment adjudged De Feo guilty of willful contempt by reason of his contumacious and unlawful refusal, after being sworn, to answer legal and proper interrogatories put to him before the Grand Jury, set forth in the transcript of testimony annexed thereto and more specifically to be found in the printed record at folios 1043 to 1101, folios 1139 to 1161, folios 1297 to 1307, and folios 450 to 510.

The two specifications of which he was adjudged guilty are in substance as follows:

First: As to his contumacious and unlawful refusal to answer interrogatories put to him before the Grand Jury *before December 4, 1953,* as to how he, himself, actually spent $31,600.50 of the $107,282.33 charged to the corporate records of the Cardinal Agency, Inc., for promotion and entertainment, which he claimed he spent during the year of 1952 for entertainment and promotional purposes.

Second: As to his contumacious and unlawful refusal to answer legal and proper interrogatories *after December 4, 1953,* embraced in folios 1297 to 1307 of the record, as to how he, himself, actually spent for entertainment and promotional purposes more than half of the $34,492 charged in the corporate records of the Cardinal Agency, Inc., for promotion and entertainment for the period January 1, 1953, to May 31, 1953, as he claimed in one portion of his testimony, or $4,000 to $5,000 for the same period as he claimed in another portion of his testimony before the same Grand Jury.

At the hearing on the motion to punish for contempt, it was stipulated, and the court in its opinion found, that: " The Fourth November, 1953 Grand Jury has been conducting an investigation to determine whether during the years 1951, 1952 and 1953 there was or has been in existence a conspiracy between the officers of the Cardinal Agency, Inc., a corporation doing business in the County of New York, to split the commissions received from various insurance companies, with certain officials of labor unions and other persons, in violation of Section 380 of the Penal Law and Section 5 and 113 of the State Insurance Law."

Appellant was secretary and treasurer of Cardinal Agency, Inc., and owned 50% of its stock, the remaining 50% being held by William Martoccia, the president. The Agency, incorporated in 1950, acted as an agent or broker for insurance companies in obtaining group-plan contracts of life, health and accident insurance inuring to the benefit of employees and members of various labor unions.

The Grand Jury investigation was founded upon the apparent claim that during 1951, 1952 and 1953 appellant and Martoccia paid large sums of money to certain labor union representatives as bribes or " kick-backs " to induce the latter to " steer " substantial group insurance contracts their way; and that these payments were concealed by the bookkeeping device of debiting

them in Cardinal's books to items such as " office expense," " entertainment," " travel," and " promotional activities ".

In an endeavor to establish those facts, the People, in a proceeding entitled " People v. John Doe et al.," called appellant before the Grand Jury presumably as a witness and interrogated him concerning possible payments by him or his company to labor union representatives with respect to the expenditures listed under the afore-mentioned categories. Appellant in his testimony denied having made any bribe payments to union officials. Acknowledging that he had disbursed a substantial portion of the funds debited to " entertainment " and other entries of that nature, he maintained that most of his expenditures along those lines were actually for entertainment of customers at night clubs and restaurants to establish good will.

The People claim that when De Feo was interrogated more specifically concerning details of these expenditures, he became vague, evasive and unresponsive; that he claimed lack of memory with respect to large sums spent only a few months before upon the subject of night club and restaurant entertainment; and that he manifested an inability to recall any occasions when he had entertained specific persons at specific establishments and how much he had spent on any of these occasions.

When called, appellant was not advised that he was one of the parties against whom the investigation was directed. He testified before the Grand Jury on four separate occasions, namely, November 24, 1953, November 25, 1953, December 3, 1953, and December 4, 1953. At no time did he sign a waiver of immunity, and so far as the record shows he was not asked to sign one. At the first three hearings, appellant did not assert a claim of privilege, nor did the grand jury make any attempt to confer immunity upon him. Portions of his testimony at these three hearings, alleged to be contumacious, resulted in a finding of contempt under the first specification of the order of commitment. Upon his last appearance before the grand jury, to wit, on December 4, 1953, at the suggestion of the foreman, and after a conference with his own counsel, appellant asserted his privilege. The foreman thereupon stated that he granted him " immunity for the crimes of conspiracy and for the crime of bribing labor officials." He was then directed to answer all questions truthfully. His testimony given thereafter as found in part at folios 1297 to 1307 of the record was the basis of a finding of contempt under the second specification of the mandate of commitment.

The proceeding before the Grand Jury was one obviously directed against appellant himself. He was a principal officer of Cardinal Agency, Inc., and owned one half of its stock. Accordingly, the questions put to him, certainly, at his first three appearances before the Grand Jury were neither legal nor proper and there could be no unlawful refusal on his part to answer such questions.

The Constitution of the State of New York provides that " no person shall  *  *  *  be compelled in any criminal case to be a witness against himself " (art. I, § 6). It is the settled law of this State that a person's constitutional privileges are violated when he is compelled to appear before a grand jury and testify in a proceeding directed against himself.

Section 750 (subd. A, par. 5) of the Judiciary Law authorizes a court to punish a person for contempt only when he refuses to answer a " legal and proper interrogatory ". Since the Grand Jury proceedings were directed against appellant and violated his constitutional rights, the interrogatories put to him were neither " legal and proper," nor was there an " unlawful " refusal to answer.

We hold that as to the first three hearings, the testimony appellant gave was elicited in violation of his constitutional rights, and no proceeding for contempt could be predicated thereon, even though he may not have asserted his privilege against self-incrimination. A finding of guilt as to the first specification in the mandate of commitment which is based upon appellant's testimony at such hearings was not warranted and must therefore be annulled.

In *People* v. *Gillette* (126 App. Div. 665, 670), in dismissing an indictment for perjury arising out of testimony given by a defendant before a Grand Jury, it was stated: " A person against whom the inquiry of the grand jury is directed should not be required to attend before that body, much less be sworn by it, and if he is and an indictment be found, it should be set aside upon motion, and if not, if the fact appears upon the trial, it will invalidate a conviction if one be had. (People v. Singer, 18 Abb. N. C. 96; People v. Haines, 1 N. Y. Supp. 55; State v. Froiseth, 16 Minn. 296; Boone v. People, 148 Ill. 440; United States v. Edgerton, 80 Fed. Rep. 374.) "

Though the opinion written in that case upon the question before us, was concurred in by only two members of the court, the doctrine enunciated has received repeated judicial approval. (*People* v. *Cahill*, 193 N. Y. 232, 239; *People* v. *Cummins*, 153

App. Div. 93, 113, affd. 209 N. Y. 283; *People* v. *Seaman,* 174 Misc. 792; *People* v. *Luckman,* 164 Misc. 230, 233; *People* v. *Rauch,* 140 Misc. 691, 693; *People* v. *Bermel,* 71 Misc. 356, 357. See, also, *People* v. *Ferola,* 215 N. Y. 285, 289, and *United States* v. *Lawn,* 115 F. Supp. 674, 677.)

In *People* v. *Bermel* (71 Misc. 356, 357–358) the court (CRANE, J. later Chief Judge of the Court of Appeals) said: " But where, on the other hand, the investigation before the grand jury is a proceeding against him or being ostensibly a general investigation is, in fact, as shown by the circumstances and evidence, a proceeding against him, then the defendant's constitutional right is violated if he be subpœnaed before the grand jury, sworn and questioned, though he makes no claim of privilege or exemption. Briefly stated, if the person testifying is a mere witness, he must claim his privilege on the ground that his answers will incriminate him, whereas, if he be in fact the party proceeded against, he cannot be subpœnaed and sworn even though he claim no privilege. People v. Gillette, 126 App. Div. 665; People ex rel. Hummel v. Davy, 105 id. 598; Counselman v. Hitchcock, 142 U. S. 457; People v. Singer, 18 Abb. N. C. 96; People v. Haines, 1 N. Y. Supp. 55; State v. Froiseth, 16 Minn. 296; State v. Gardner, 88 id. 130.''

The recently enacted section 2447 of the Penal Law (L. 1953, ch. 891, effective Sept. 1, 1953) provides in part as follows:

" § 2447. *Witnesses' immunity.*

" 1. In any investigation or proceeding where, by express provision of statute, a competent authority is authorized to confer immunity, if a person refuses to answer a question or produce evidence of any other kind on the ground that he may be incriminated thereby, and, notwithstanding such refusal, an order is made by such competent authority that such person answer the question or produce the evidence, such person shall comply with the order. If such person complies with the order, and if, but for this section, he would have been privileged to withhold the answer given or the evidence produced by him, then immunity shall be conferred upon him, as provided for herein.

" 2. ' Immunity ' as used in this section means that such person shall not be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which, in accordance with the order by competent authority, he gave answer or produced evidence, and that no such answer given or evidence produced shall be received

against him upon any criminal proceeding. But he may nevertheless be prosecuted or subjected to penalty or forfeiture for any perjury or contempt committed in answering, or failing to answer, or in producing or failing to produce evidence, in accordance with the order, and any such answer given or evidence produced shall be admissible against him upon any criminal proceeding concerning such perjury or contempt.

" 3. ' Competent authority ' as used in this section means: * * *

" (c) The grand jury before which a person is called to answer questions or produce evidence, when such grand jury is expressly requested by the prosecuting attorney to order such person to give an answer or produce evidence; * * *

" 4. Immunity shall not be conferred upon any person except in accordance with the provisions of this section."

The statute quoted which was in effect when appellant appeared before the Grand Jury makes it clear that immunity may only be conferred by " competent authority." The grand jury is declared to be one of the agencies constituting a competent authority. But an order of the grand jury may be directed only after a claim of privilege is made by the witness, and after the grand jury is " expressly requested by the prosecuting attorney to order such person " to testify.

Contempt statutes must be strictly construed. " Punishment for a criminal contempt is a drastic remedy for willful wrong." (*Matter of Spector* v. *Allen,* 281 N. Y. 251, 259; *Rutherford* v. *Holmes,* 5 Hun 317, affd. 66 N. Y. 368.) " To protect the liberty of the individual from possible abuse of power, punishment for contempt is hedged about with restrictions and subject to regulations imposed by the Legislature. Disobedience only of mandates of the court given in accordance with law are subject to such punishment. The command must be clear; disobedience must be willful." (*Matter of Spector* v. *Allen,* 281 N. Y. 251, 260, *supra.*)

As already noted, with respect to the first three hearings at which appellant testified, he did not in the absence of a written waiver, acquire immunity and he could not be punished for contempt in regard to the testimony he gave at those hearings because the testimony was elicited in violation of his constitutional rights.

At the fourth hearing, which was held on December 4, 1953, the Grand Jury attempted to confer immunity on appellant. The attempt was abortive, however, because it was limited, as

recited in the mandate of commitment, merely to immunity "for violations of sections 580 and 380 of the Penal Law."

By the very statement of the foreman of the Grand Jury, the immunity granted to appellant was restricted to the crimes specifically mentioned and not for any and all crimes directly or indirectly revealed by his testimony. Thus, the immunity granted did not, for example, include the crimes of larceny or violation of the State income tax laws. Though it may be argued that the statute (Penal Law, § 2447, subd. 2) conferred complete immunity in any criminal proceeding other than for perjury or contempt, nonetheless to the lay mind, the immunity granted by the foreman was in his words confined to "crimes of conspiracy and for the crime of bribing labor officials." Such a grant was not coextensive with and as broad in protection as his constitutional privilege against self-incrimination. "To force disclosure from unwilling lips, the immunity must be so broad that the risk of prosecution is ended altogether (*People ex rel. Lewisohn* v. *O'Brien,* 176 N. Y. 253; *Counselman* v. *Hitchcock,* 142 U. S. 547; *Heike* v. *United States,* 227 U. S. 131, 142)." (*Matter of Doyle,* 257 N. Y. 244, 251, CARDOZO, Ch. J.) As the immunity granted was not complete, the testimony given by appellant at the fourth hearing was also elicited in violation of his constitutional rights and no proceeding for contempt could be predicated thereon.

In any event, even if it be assumed that complete statutory immunity was accorded to appellant at the fourth hearing, the finding of contempt would still be invalid. The mandate of commitment in its entirety is predicated not only on the testimony given by appellant at the fourth hearing, but also upon that obtained from him at the first three hearings.

Moreover, the finding of guilt as to the second specification contained in the mandate of commitment, based upon testimony given by appellant at the fourth hearing as set forth in the record between folios 1297 and 1308, in our opinion fails to establish that his answers there recorded were willfully or contumaciously evasive or that they constituted a refusal to answer.

Respondent's argument to the effect that appellant's constitutional rights were not violated because an immunity statute (Penal Law, § 2447) was "operative" cannot be sustained. The plain fact is that no immunity statute was operative, nor could one become operative, until the grand jury, or one of the other duly authorized agencies mentioned in the statute,

had actually conferred complete immunity upon appellant without limiting the grant to certain crimes, as was done here.

In conclusion, we find that there was no basis for a finding of contumacious and unlawful refusal to answer legal and proper interrogatories put to appellant as to either specification set forth in the mandate of commitment.

For all of the foregoing reasons, we dissent and vote that the mandate should be annulled and that appellant should be discharged.

BERGAN, J., concurs with BREITEL, J.; PECK, P. J., concurs in concurring opinion; COHN, J., dissents in opinion, in which DORE, J., concurs.

Order affirmed.