Edgar J. Nathan, Jr., J.
This is a habeas corpus proceeding seeking the discharge of relators from civil jail.
Each of the relators was subpoenaed to appear and did appear before the Temporary State Commission of Investigation in August, 1958. The subpoenas served on each of them stated in part that the subject of the investigation was to inquire into: ‘ ‘ Matters concerning the public peace, public safety and public justice, and the faithful execution and effective enforcement of the laws of the State of New York, with particular reference but not limited to organized crime and racketeering, including the organization, purposes and participants of, and discussions had and decisions made at, a meeting held on the premises of Joseph Barbara on or about November 14, 1957, at Apalachin, Tioga County, State of New York.”
*696 Each was asked a series of 26 questions relevant to the subject of investigation. Each refused to answer the questions propounded upon the ground of possible self incrimination. The commission thereupon conferred immunity upon them in accordance with section 2447 of the Penal Law. They persisted in their refusal to answer and were committed to civil jail pursuant to section 406 of the Civil Practice Act, to remain there until they answer “ truthfully and responsively ” the 26 questions set forth in the orders of this court dated August 12, 1958 and August 22, 1958.
These orders were unanimously affirmed by the Appellate Division (Matter of Comm, of Investigation of State of N. Y. v. Lombardozzi, 7 A D 2d 48). Upon the affirmance by the Court of Appeals on March 13,1959 (5 N Y 2d 1026), relators immediately requested an opportunity to answer the questions and reappeared before the commission for that purpose. They then gave answers to the original 26 questions as well as to other questions propounded. At the conclusion of the hearing the Commissioners refused to consent to the release of relators, on the ground that the answers on their face indicate unequivocally that they are unworthy of belief, and hence the witnesses had not complied with the order of the court which directed them to give truthful testimony. Relators then brought on these writs of habeas corpus, claiming that they had answered the questions specified in the orders of commitment, and are entitled to be released.
The commission on the return of the writ applied for a hearing for the purpose of producing witnesses to prove that the answers given were false and incredible. A summary proceeding such as this is not the appropriate forum for determining whether or not an answer is true or false. Perjury per se is not punishable by contempt, or other summary process (Matter of Foster v. Hastings, 263 N. Y. 311; Fromme v. Gray, 148 N. Y. 695; Matter of Steingut v. Imrie, 270 App. Div. 34). If any answer is false the crime of perjury has been committed and the witness making such false answer is subject to prosecution in a trial before a jury under the safeguards of the criminal law (Matter of Foster v. Hastings, supra). There is therefore neither purpose nor authority for the court to hold a hearing and make collateral inquiry into the falsity of the testimony as such (see Matter of Finkel v. McCook, 247 App. Div. 57, 63, affd. 271N. Y. 636). Consequently, the commission’s application for such a hearing must be denied.
The court in this proceeding can only determine whether the questions have or have not been answered within the purview *697 of the statute. For it is only when the witness fails or refuses to give testimony, and thereby obstructs the examining body from carrying out the purpose of its inquiry, that a commitment is authorized under section 406 of the Civil Practice Act. If an answer has been given, the court may still find that the question was not answered, as it is not any form of response that satisfies the test. The test is whether, upon the face of the record alone the conclusion is inescapable as a matter of law, that the “ testimony is not a bona fide effort to answer the questions at all ” (United States v. Appel, 211 F. 495, 496). What the court in that case said in its opinion by Hand, J. (p. 495), is equally applicable here. “ The rule, I think, ought to be this: If the witness’ conduct shows beyond any doubt whatever that he is refusing to tell what he knows, he is in contempt of court. That conduct is, of course, beyond question when he flatly refuses to answer, but it may appear in other ways. A court, like any one else who is in earnest, ought not to be put off by transparent sham, and the mere fact that the witness gives some answer cannot be an absolute test. ’ ’
In answer to the questions propounded, each of the relators testified in substance that he went to the Barbara home on the day in question solely as a spontaneous and casual visitor to a sick friend, and that during the six hours that he remained there in company with some 40 to 60 other visitors, he saw nothing, heard nothing and said nothing, other than superficial conversation and innocuous greetings and farewells.
The relators have thus made responses to the questions but have successfully avoided giving any information as to the subject of the inquiry as specified in the subpoenas served upon them. The technique adopted here is comparable to that adopted by the witness in People v. De Feo (284 App. Div. 622) in which it was held that" the evasive answer, which avoids giving information, is tantamount to a refusal to answer. Where, as here, witnesses have designedly frustrated the purpose of the inquiry and have deliberately concealed material information, the court is not required to shut its eyes to reality and to accept answers which are replies in form only, but which, in substance, are as useless as complete refusals to answer (see Matter of Finkel v. McCook, 247 App. Div. 57, affd. 271 N. Y. 636, supra).
People ex rel. Falk v. Sheriff of New York County (258 N. Y. 437), cited by both counsel, is not to the contrary, for in that case, the sole issue was the truthfulness of the witness’ answer.
It must be borne in mind that the remedy provided in section 406 of the Civil Practice Act is not punitive in nature, but is coercive (Matter of Comm, of Investigation of State of N. Y. v. *698 Lombardossi, 7 A D 2d 48, supra). Its sole purpose is to compel the disclosure of the information sought by the inquiry. To that end subdivision 3 of section 406 of the Civil Practice Act provides: “If the person subpoenaed * * * refuses without reasonable cause to be examined, or to answer a legal and pertinent question * * * a judge of a court of record * * * may forthwith * * * by warrant commit the offender to jail, there to remain until he submits to do the act which he was so required to do ’ ’. Consequently an answer which avoids giving that information would defeat the very purpose of the statute and hence must be regarded as tantamount to a refusal to answer within the meaning of this section.
Counsel for relators having objected to the submission, the court has not considered the Exhibits A, B and C, attached to the affidavit of Nathan Skolnik, Deputy Commissioner of the Temporary Commission of Investigation, sworn to March 23, 1959, except of course, that it has read and considered the opinion of Mr. Justice Bastow as officially reported. Nor has it considered the exhibit attached to the affidavit of Elliot N. Lumbard, sworn to March 24,1959.
In arriving at this decision, the court is mindful of the rights afforded the individual and the protection given him against oppression and injustice. Such rights, however, whether found in constitutional provisions or statutes are not intended to serve as weapons to defeat justice, nor to obstruct efforts to protect society from criminal or unlawful acts. Society is also entitled to full protection under the law. Our judicial system is not impotent to give this protection both to the individual and to society.
The writs are dismissed, bail is revoked and the relators remanded.