In the Matter of the SECOND ADDITIONAL GRAND JURY OF THE COUNTY OF KINGS FOR THE MARCH 1958 TERM, Petitioner, v. JOEL SIMSON, Respondent.

Supreme Court, Criminal Term, Kings County, September 11, 1962.

*Edward S. Silver District Attorney (Marvin Preminger* of counsel), for petitioner. *Solomon Safter* for respondent.

HYMAN BARSHAY, J. This is an application by the District Attorney of Kings County to punish Joel Simson for a contempt of court pursuant to section 750 (subd. A, par. 5) of the Judiciary Law, and section 619 of the Code of Criminal Procedure, for his contumacious and unlawful refusal, after being sworn as a witness before a Grand Jury, to answer legal and proper interrogatories put to him on the 6th and 20th days of March, 1962.

The Second Additional Grand Jury of Kings County for the March 1958 Term, as extended, was considering and inquiring

into violations of section 723 (subd. 1, par. [e]; subd. 3, par. [d]) of the Labor and Management Improper Practices Act (Labor Law, art. 20-A) which prohibit payment of moneys by an employer to a labor representative whose union represents his employees, other than reasonable compensation for services rendered as an employee of the employer.

Pursuant to a subpœna, Joel Simson appeared before said Grand Jury and testified that he was president of R. Greenspan, Inc., a corporation, which employed seven to nine individuals; that on December 22, 1959 he signed a contract with the Amalgamated Labor Union, Local No. 88, of which his employees were members; that one, Nicholas San Fillipo (described as " Nick "), not an employee of R. Greenspan, Inc., executed the contract on behalf of the union; that thereafter he (Simson) loaned the said Nicholas San Fillipo the sum of $500 in 1959 and the sum of $300 in 1960; that both loans were in cash; that no written evidence of the indebtedness ever existed, but was requested; that the said loans remained wholly unpaid.

A series of questions followed which were designed to elicit from Simson answers to establish that the financial transactions between Nicholas San Fillipo and him were in reality a " payoff " in violation of law. Despite Simson's confrontation in the Grand Jury with statements previously made by him to representatives of the State Labor Department, he nevertheless insisted that his financial dealings with the said San Fillipo were loans.

The People urge in this court that Simson's answers were so palpably false as to constitute an evasion and refusal to answer. A reading of the Grand Jury minutes leads the court to the inescapable conclusion that Simson's explanation of his financial dealings with San Fillipo was nothing but a subtle scheme to conceal their true nature. Whether Simson's answers were truthful or were incredible is, however, not the determinative test of whether or not he should be punished summarily for criminal contempt. (*People ex rel. Valenti* v. *McCloskey*, 8 A D 2d 74, 84, affd. 6 N Y 2d 390.)

Assuming *arguendo*, that the testimony of Simson before the Grand Jury was false, " It is well-settled law in this State, as recognized in principle by both courts below, that false testimony is not punishable summarily as a *civil* contempt (*Fromme* v. *Gray*, 148 N. Y. 695; *Matter of Foster* v. *Hastings*, 263 N. Y. 311; *Matter of Silberman Dairy Co.* v. *Econopouly*, 177 App. Div. 97), or as a *criminal contempt* (*Matter of Finkel* v. *McCook*, 247 App. Div. 57, affd. 271 N. Y. 636; *People* v. *De Feo*, 284 App. Div. 622, revd. on another ground 308 N. Y. 595; *Matter of Stein-*

*gut* v. *Imrie,* 270 App. Div. 34). In the *Foster* case we unanimously rejected the argument that ' false swearing is not to be distinguished from a refusal to testify ', and held that on the issue of perjury the witness who is alleged to have testified falsely ' is entitled to a trial by jury under the safeguards of the criminal law ' (263 N. Y., p. 314; see, also, *Matter of Finkel* v. *McCook,* 247 App. Div., pp. 64–65, affd. 271 N. Y. 636, *supra*)." (*People ex rel. Valenti* v. *McCloskey,* 6 N Y 2d 390, 398.)

Too, in *Matter of Commission of Investigation* v. *Lombardozzi* (9 A D 2d 95, 97–98, affd. 8 N Y 2d 787), the witness after one year of imprisonment was granted an opportunity to reply to 26 questions upon which he previously maintained silence. While Lombardozzi's belated explanation of his presence at the notorious " Appalachin Conference " was considered improbable, if not untrue, the court released the witness from confinement, and in its *Per Curiam* opinion wrote (pp. 97–98) : " Such a narrative must be viewed with considerable skepticism. It may be difficult to accept this innocuous and nonincriminating testimony as the true story, in the light of the fact that Lombardozzi chose to remain in prison for a year rather than divulge it. Still, it cannot be said that it is so improbable and wholly incredible on its face as to constitute no answer at all — a palpable evasion. The answers of appellant may in fact be a tissue of fictions, half-truths and evasions designed to obscure the truth, but in summary contempt proceedings, as stated in *People ex rel. Valenti* v. *McCloskey* (8 A D 2d 74, 84, *supra*), if the answer given by witnesses were ' only false answers, even incredible ones — but short of palpably and obstructively evasive ones — they have satisfied the statute and the orders under which they were committed, and they must be released. For if there is any issue of credibility then it is one which can only be resolved in a criminal prosecution for perjury or for the crime of contempt, and not in a summary proceeding.' "

The denial of the instant application to punish Simson for summary contempt does not preclude the District Attorney from availing himself of other applicable remedies under the law. (Cf. *People* v. *Ashby,* 8 N Y 2d 238; *People* v. *Shapolsky,* 8 A D 2d 122.) " Sound public policy requires that the offender should be left to the criminal law." (MARTIN, P. J., *Matter of Finkel* v. *McCook,* 247 App. Div. 57, 63, affd. 271 N. Y. 636.) The motion is denied.