George Beisheim, Jr., J.
The defendant, Nicholas Gasparino, was indicted on December 16, 1969, for the crime of murder. He moves to dismiss the indictment on the ground that he had obtained immunity from a different Grand Jury than the one that indicted him, which Grand Jury previously had found Indictment No. 1126/68, based, in part, on Gasparino’s testimony, charging John De Tore and Kenneth Wedra with the crime of murder. De Tore and Wedra were convicted after a trial by jury on December 9, 1969, and both have been sentenced to a minimum term of 25 years and a maximum term of life imprisonment.
The undersigned presided over the trial of De Tore and Wedra and is thoroughly familiar with the proceedings therein, which fact is alluded to because the trial record of the De ToreWedra trial has been made part of ithe record before this court in connection with the motion.
*1077 Part of the minutes of the 1968 Grand Jury which indicted De Tore and Wedra and before which the defendant Gasparino testified, has been incorporated in the answering affidavits of the District Attorney, and Gasparino’s entire Grand Jury testimony has been submitted to and examined by the court m camera. Without going into detail, it is sufficient to say here that the trial record in the De Tore-Wedra trial contains testimony that Gasparino engaged Wedra at the request of De Tore to kill De Tore’s wife in consideration of the payment of the sum of $9,000, part of which was paid before and part of which was to be paid after Mrs. De Tore was killed. The testimony at the trial was that Gasparino and another, Vito Di Tomasso, who was the original contact between De Tore and Gasparino, received some of the money that De Tore paid for the killing of his wife.
Without revealing the testimony of Gasparino before the Grand Jury, the court feels constrained to say that, without this testimony, there would not have been sufficient evidence to sustain Indictment No. 1126/68 insofar as it affected the defendant Wedra. Also, if it had not been for a completely unforeseen development which occurred during a weekend recess in the De Tore-Wedra trial on Sunday evening, November 16, 1969 (after the jury had been impanelled the previous Friday but before the opening statements scheduled to take place on Monday had been made), when a previously unknown witness named Bruno La Spina contacted the Assistant District Attorney trying the ease and revealed to him the fact that Wedra allegedly had admitted to La Spina that he (Wedra) had killed Mrs. De Tore, and the subsequent testimony at trial of this witness, this trial court would necessarily have been compelled as a matter of law to grant the motion of the defendant Wedra to dismiss the indictment as against him as a result of Gasparino’s refusal to testify at the trial. In brief, the trial testimony of Gasparino (if it had conformed to his testimony before the Grand Jury), along with the other testimony at the trial, would have created an issue of fact for the jury as to the guilt of Wedra. The testimony of the newly discovered witness La Spina, along with the other trial testimony, did create an issue of fact for the jury as to the guilt of Wedra, but there would have been no issue of fact sufficient to submit to the jury as to Wedra’s guilt without the testimony of either La Spina or Gasparino. Further, it is significant that the supplemental affidavit of Gasparino’s attorney reveals that Gasparino, when he initially made his decision not to testify, was unaware of the *1078 fact that the Assistant District Attorney fortuitously had been contacted by a “ surprise witness ” whose testimony replaced the gap created in the People’s case against Wedra by the refusal of Gasparino to testify at the trial as to the facts he had stated under oath before the Grand Jury, or to testify at trial at all. The record reveals, however, that the Assistant District Attorney, before he made his opening statement to the jury, did not know that Gasparino would not testify at trial, and Gasparino’s decision not to testify was only conveyed to the Assistant District Attorney by Gasparino’s attorney after the Assistant District Attorney was placed in the awkward situation of informing the jury that they would hear from Gasparino. In the opinion of this court, the conduct of Gasparino in playing “ fast and loose ” with the Assistant District Attorney put Gasparino in an even more inequitable posture, if possible, than was the position in which he already had placed himself.
The affidavits of the attorney for the defendant Gasparino, who was also the attorney for Di Tomasso, the other alleged “ go-between ” between De Tore and Wedra, and the affidavits of the Assistant District Attorneys are in sharp disagreement in the legal conclusions that they draw as to what type of immunity, if any, was promised to and obtained by Gasparino upon the occasion of his testimony before the Grand Jury, and also as to what was encompassed in the “ agreement ” between Gasparino’s attorney and the Assistant District Attorney who presented the case to the 1968 Grand Jury, to wit, what was to be Gasparino’s part before the Grand Jury and in the trial of De Tore and Wedra, and what consideration was to be given him upon the fulfillment of such part.
The position of Gasparino’s and Di Tomasso’s attorney is summarized in his letter under date of December 8, 1968 to said Assistant District Attorney, wherein it was stated: “ To confirm our telephone conversation of today, this shall formally advise you that I represent Nicholas Gasparino and Vito DeTomaso and that I would appreciate being notified when this matter will be presented to the Grand Jury at which time as you undoubtedly recall, my clients will testify under a grant of immunity.”
In his affidavit sworn to January 22, 1970, submitted in support of the motion, Gasparino’s attorney, with the natural zeal of an advocate, adds the word “ complete ” before the word “ immunity ” which he had employed in his December 8, 1968, letter, saying in paragraph 6 on page 2 of his reply affidavit: “ Your deponent who is well experienced in the crim *1079 inal law, extracted from Mr. Schneider a promise that if the defendant revealed the name of Kenneth Wedra (one of the triggermen) and so testified before the Grand Jury that he would receive complete immunity. There was no question as to the explicit understanding of this agreement, for your deponent specifically recalled discussing the fact that the defendant, when apprehended, also had found in his home some policy slips as well as the revelation that his automobile was a stolen one. The District Attorney assured your deponent that these matters would also be immunized.”
The affidavit of the Assistant District Attorney emphasizes different aspects of the ‘1 agreement ’ ’ between himself and Gasparino’s attorney. His position is summarized on pages 1 and 2 of his affidavit sworn to on February 11, 1970, as follows:
“Your deponent presented the case of the People v. John De Tore and Kenneth Wedra to the Westchester County Grand Jury on December 17, 1968. Your deponent had conversations with Vincent W. Lanna, attorney for Nicholas Gasparino with respect to his testimony before the Grand Jury upon that occasion. It was at that time the intention of the District Attorney’s Office not to prosecute Nicholas Gasparino upon the charge of Murder arising from the killing of the defendant De Tore’s wife upon condition that he cooperate with the prosecution as a State’s witness and testify truthfully against the triggerman, one Kenneth Wedra. It was certainly my intention and understanding at the time that the cooperation required would include not only testimony in the Grand Jury but at trial. Upon the aforesaid condition, the defendant was permitted to be a witness in the Grand Jury and if he had not agreed to thoroughly cooperate in the investigation and prosecution of this case, he certainly would have himself been indicted for Murder, as the District Attorney’s Office then had sufficient evidence for that indictment.
‘1 While the term immunity may have been used in conversations between myself and counsel for the defendant Gasparino, it was used in an inexact sense. At no time did we ever discuss by specific term ‘ statutory ’ or ‘ transactional ’ immunity, and if transactional or statutory immunity had been requested by the defendant, the request would have been rejected and he would have been indicted, because it would have been totally senseless to permit one culpable party to go free simply to obtain an indictment against another culpable party without any reasonable assurance that the indictment could subsequently be successfully prosecuted. It was certainly my understanding at the time that Mr. Lanna understood that the consideration being *1080 extended to his client was upon condition not only of his Grand Jury testimony, but of his trial testimony as well.”
The court deems it most significant that Gasparino’s attorney has not stated that the terms “transactional immunity” or “testimonial immunity ” were ever used by either the Assistant District Attorney or himself in their conversations before Gasparino testified before the Grand Jury, on December 17, 1968. The ‘ ‘ agreement ’ ’ between them was of a general nature, and surprisingly lacking in specific legal language when viewed in the light of the experience and competence of both attorneys in the field of criminal law. The court finds no real conflict of fact in the two affidavits: — the difference is the legal conclusions that Gasparino’s attorney on one side and the Assistant District Attorney on the other side deduce from the informal arrangements discussed before Gasparino testified before the Grand Jury.
The court agrees that it would have been not only illogical, but also contrary to the best interests of the People of the State of New York whose interests it was his duty to protect, for the Assistant District Attorney to have made any arrangement to excuse Gasparino from his culpability, if any, in the murder of Mrs. De Tore without presenting the case, if any, against Gasparino to the Grand Jury for possible indictment, and if the Grand Jury saw fit to indict, for trial, unless Gasparino co-operated with the prosecution by testifying against the actual triggerman who committed the murder both before the Grand Jury and at the trial. An indictment without a reasonable chance for a conviction would have been a futile gesture. There could have been no conviction of Wedra without the testimony of Gasparino had it not been for the last-minute discovery of the surprise witness La Spina — a fact unknown to Gasparino at the time he initially made his decision not to testify at trial.
The defendant, therefore, is asking the court to protect him from the consequences of his actions, which, in effect constituted a “ double cross ” óf the Assistant District Attorney when he deliberately refused to repeat at trial the testimony he gave under oath to the 1968 Grand Jury. Apparently, he was perfectly willing to face the possibility of a one-year sentence for the crime of contempt if he could forestall the conviction of Wedra — whether to save a pal, out of fear, or in accordance with the policy of ‘ ‘ the mob ’ ’, the record does not reveal. The question which the court must decide is whether, as a matter of law, the court must sustain the defendant’s contention which would bring about such an inequitable result.
*1081 In the opinion of this court, the defendant, when he testified before the 1968 Grand Jury, received testimonial immunity, but not transactional immunity. The pertinent parts of minutes relating to the discussion of immunity when Gasparino testified before the Grand Jury read as follows (Grand Jury minutes, pp. 53, 54): By Mb. Schneider :
“ Q. And did there come a time when Vito spoke with you about something that was to be done on behalf of John DeTore? A. Yes, sir. Excuse me. For a minute, may I say something? Mr. Lanna advised me to say that immunity should be said before I should say anything. I don’t know what he means by that.
“ Q. Well, you have been promised immunity by the day, have you not? A. Yes.
“ Q. And I have now said it in front of the Grand Jury, have I not? A. Bight. Thank you.”
When Gasparino testified before the Grand Jury as aforesaid, he received testimonial immunity automatically as required by section 6 of article I of the New York State Constitution (People v. Steuding, 6 N Y 2d 214). Judge Feld, speaking for the 4-to 3-majority of the court, stated at pages 216-217: “ By virtue of the Constitution of this State (art. I, § 6) — and it is solely the Constitution of New York with which we are now concerned — a prospective defendant or one who is a target of an investigation may not be called and examined before a Grand Jury and, if he is, his constitutionally-conferred privilege against self-incrimination is deemed violated even though he does not claim or assert the privilege.”
Judge Feld expressly left open the question which this court must decide in ruling upon defendant’s motion to dismiss, stating at page 217: “ A violation of the constitutional privilege carries with it a dismissal of the indictment returned by the Grand Jury before which the defendant testified. Whether, however, it also cloaks him with an immunity, a freedom from prosecution for the crime for which he has been indicted, is a question with which we are not now concerned. Its answer must await a case in which it is presented.”
The Court of Appeals in People v. Laino (10 N Y 2d 161), by dictum at least, passed upon the questions left undetermined by the opinion of the majority of the court in People v. Steuding (supra). First, the court, in the Lamo case, dismissed the indictment in accordance with the ruling of People v. Steuding (supra) stating at page 172: “ Here, the privilege was violated, it is true, *1082 because defendant was compelled to give testimony concerning his part in a possible conspiracy of corruption in the sale of tires to the city, but that testimony was none the less tarnished because it subsequently was used, at least in part, to support an indictment for a different crime. The violation of the privilege occurred when the testimony and records were given under compulsion of subpoena (People v. Gillette, 126 App. Div. 665, 667-670, supra; People v. Ferola, 215 N. Y. 285, 289-290, supra; People v. Seaman, 175 Misc. 792, 795, supra) and their subsequent use against defendant in a criminal prosecution of any kind was prohibited (People v. Steuding, supra). ”
Second, however, the court in Laino discussed the question it had left open in the Steuding case, stating at pages 172-173:
“ But defendant, merely by testifying, did not receive automatic immunity for all time, as to 1 any transaction, matter or thing ’ revealed by him, as he would have prior to the enactment of section 2447 of the Penal Law (L. 1953, ch. 891, eff. Sept. 1, 1953). Prior to section 2447, of course, in a conspiracy or bribery case, the applicable statutes (Penal Law, §§ 380, 381, 584) provided for such automatic immunity (People v. De Feo, supra; People ex rel. Coyle v. Truesdell, 259 App. Div. 282) unless the witness executed a written waiver (Penal Law, § 2446). To avoid the inadvertent conferring of immunity upon witnesses unsuspected of the wrongdoing they themselves ultimately disclosed, section 2447 was enacted. Briefly summarized, it provides that in order to obtain complete immunity a witness (including a prospective defendant) must (1) affirmatively claim his privilege against self incrimination, (2) be directed or ordered to answer by competent authority, for instance, a Grand Jury at the request of the prosecutor, and (3) testify (People v. De Feo, 308 N. Y. 595, 602-604, supra).
‘ ‘ "We have held, of course, that this statute does not alter the rule forbidding the compulsion by subpoena of the testimony of a target of a Grand Jury investigation, even where he fails affirmatively to assert his privilege. Such testimony, whether or not the prospective defendant is advised of his privilege before the Grand Jury, still is regarded as compelled, and violative of our Constitution (People v. Steuding, supra; People v. De Feo, supra; People v. Freistadt [6 A D 2d 1053] supra). ‘ A violation of the constitutional privilege carries with it a dismissal of the indictment returned by the Grand Jury before which the defendant testified ’ (People v. Steuding, supra, p. 217).
“ This, however, is a different thing entirely from complete immunity, and reindictment is possible if sufficient evidence, independent of the evidence, links, or leads furnished by the *1083 prospective defendant, is adduced to support it (People v. Freistadt, supra; People ex rel. Coyle v. Truesdell, 259 App. Div. 282, 285, supra; People v. Bermel, 71 Misc. 356, supra; People v. Singer, 18 Abb. N. C. 96; People v. De Feo, 284 App. Div. 622, 626, revd. on other grounds 308 N. Y. 595, supra; see, also, Matter of Ryan v. Supreme Ct., 7 N Y 2d 989, and People v. Ryan, 11 A D 2d 155, upholding reindictment of defendant involved in People v. Steuding, supra, and People v. Ryan, 12 A D 2d 841, affg. conviction, upon reindictment, of defendant in People v. Steuding). Complete immunity from prosecution may be obtained by a prospective defendant, or any witness, only by strict compliance with the procedural requirements of our immunity statutes properly enacted (Matter of Boyle, 257 N. Y. 244, 257-268, opinion by Cardozo, Ch. J.), or by virtue of immunity provisions in our State Constitution (e. g., art. XIII, §3).”
The defendant’s motion to dismiss must also fail because the transactional immunity which he claims to have received was not within the legal power and authority of the 1968 Grand Jury to give. Section 619-c of the Code of Criminal Procedure, which is identical with its predecessor (former Penal Law, § 2447), empowers, among other bodies, Grand Juries (not District Attorneys) to bestow transactional immunity upon witnesses who testify in connection with the investigations of certain crimes described in section 619-d of the Code. Murder is not one of the crimes so described.
The minutes of the Grand Jury and the log of the Grand Jury, before whom Gasparino testified, reveal that the sole business of that Grand Jury was the investigation of the murder of Dorothy De Tore. De Tore and Wedra were indicted for that murder and, in all probability, Gasparino and Di Tomasso would have been indicted had they not received a ‘ ‘ promise of immunity ” for their testimony before the Grand Jury and at trial, by the Assistant District Attorney, and also by reason of the testimonial immunity they recieved as a result of testifying before the Grand Jury.
In this court’s opinion, Matter of Gold v. Manna (25 N Y 2d 475) is inapplicable to the case at bar. Matter of Gold involved a Grand Jury investigation of a conspiracy or conspiracies to commit murder or murders, some of which killings had been committed and some of which had failed. The investigation was concerned with an alleged conspiracy of an organized crime syndicate to commit murder and other crimes in connection with an effort by unnamed persons to succeed one Joseph Bonanno as head of the syndicate. The Court of Appeals ruled that the *1084 Grand Jury had power to confer immunity from prosecution for murder under the circumstances of such an investigation.
In the case at bar, the Grand Jury was investigating one, and only one, alleged crime — the alleged murder of Dorothy De Tore — in which it appeared that De Tore, Wedra, Gasparino, Di Tomasso and one other person may have been involved. The provisions of sections 619-c and 619-d of the Code of Criminal Procedure were not intended to and do not apply to this factual situation.
In conclusion, the court states that it has examined in camera the minutes of the 1969 Grand Jury testimony upon which the indictment against the defendant Gasparino is based. Such minutes do not include any evidence given by Gasparino to the 1968 Grand Jury or ‘ ‘ links, or leads furnished by the prospective defendant” (People v. Laino, supra) in his testimony before that Grand Jury. Accordingly, defendant’s motion to dismiss the indictment is denied.